## IN THE DISTRICT COURT OF CARTER COUNTY
## STATE OF OKLAHOMA

| | | |
|---|---|---|
| (1) TRAVIS GRAHAM, | ) | |
| | ) | |
| Plaintiff, | ) | **FILED**<br>IN DISTRICT COURT |
| | ) | |
| vs. | ) | AUG 0 9 2019 |
| | ) | RENEE BRYANT, Court Clerk<br>Carter County, Oklahoma |
| (1) CITY OF LONE GROVE, | ) | |
| OKLAHOMA, an Oklahoma | ) | |
| Municipality; | ) | |
| | ) | |
| (2) BOARD OF COUNTY | ) | |
| COMMISSIONERS FOR | ) | |
| CARTER COUNTY, an Oklahoma | ) | Case No. CJ-19-181 |
| Political Subdivision; | ) | |
| | ) | |
| (3) CHRIS BRYANT, in his official | ) | |
| and individual capacities; | ) | |
| | ) | |
| (4) DAVID JONES, individually; | ) | |
| | ) | |
| (5) ROBERT OLDHAM, in his official | ) | |
| and individual capacities; | ) | |
| | ) | |
| (6) GILBERT HENSLEY, | ) | |
| individually, | ) | |
| | ) | |
| Defendants. | ) | |

## PETITION

COMES NOW Plaintiff, Travis Graham ("Graham") for his cause-of-action against

Defendants City of Lone Grove, Oklahoma ("Lone Grove"); Carter County Board of County

Commissioners ("BOCC"); Carter County Sheriff Chris Bryant ("Bryant"); Carter County

Sheriff's Deputy David Jones ("Jones"); Lone Grove Chief of Police Robert Oldham

1

6:19-cv-00298-RAW   Document 2-2   Filed in ED/OK on 09/04/19   Page 2 of 25

("Oldham") and Lone Grove Police Officer Gilbert Hensley ("Hensley"), states as follows:

## **THE PARTIES**

1. Plaintiff Graham was a citizen and resident of Carter County, Oklahoma at the time of the incident hereinafter described.

2. Defendant Lone Grove is a municipality and political subdivision located in Carter County, Oklahoma. Defendant Lone Grove, through the Lone Grove Police Department, was responsible for providing law enforcement services in the City of Lone Grove, Oklahoma. Defendant Lone Grove may sue or be sued by name.

3. Defendant Carter County BOCC is the entity charged with administration of county governmental services in Carter County. Defendant Carter County BOCC may sue or be sued by name and has the authority to delegate to the Carter County Sheriff final authority to establish Defendant BOCC's policy with regards to training and the use of force by sheriff's deputies.

4. Defendant Bryant was, at all times relevant hereto, the Carter County Sheriff, employed by and working for Defendant Carter County BOCC. Defendant Bryant engaged in conduct complained of under color of law and within the scope of his employment as agent and representative of Defendant Carter County BOCC. Defendant Carter County BOCC delegates final decision-making authority to Defendant Bryant to establish municipal policy with regards to law enforcement officer use-of-force. The policies, practices and customs, promulgated, created, implemented and/or utilized by Defendant Bryant represent the official policies and/or customs of Defendant Carter County BOCC with regards to law enforcement

2

office use-of-force.

5. Defendant Jones was, at all times relevant hereto, a sworn Carter County Sheriff's Deputy, employed by and working for Defendant Carter County BOCC and/or Defendant Bryant. Defendant Jones engaged in the conduct complained of under color of law and within the scope of his employment as agent and representative of Defendant Carter County BOCC and/or Defendant Bryant.

6. Defendant Oldham was, at all times relevant hereto, the Lone Grove Chief of Police, employed by and working for Defendant Lone Grove. Defendant Oldham engaged in conduct complained of under color of law and within the scope of his employment as agent and representative of Defendant Lone Grove. Defendant Lone Grove delegates final decision-making authority to Defendant Oldham to establish municipal policy with regards to law enforcement officer use-of-force. The policies, practices and customs, promulgated, created, implemented and/or utilized by Defendant Oldham represent the official policies and/or customs of Defendant Lone Grove with regards to law enforcement office use-of-force.

7. Defendant Hensley was, at all times relevant hereto, a sworn Lone Grove Police Officer, employed by and working for Defendant Lone Grove and/or Defendant Oldham. Defendant Hensley engaged in the conduct complained of under color of law and within the scope of his employment as agent and representative of Defendant Lone Grove and/or Defendant Oldham.

3

## JURISDICTION AND VENUE

Plaintiff incorporates all previous allegations and statements and further alleges as follows:

8. This action arises from an incident that occurred in Carter County, Oklahoma.

9. At all material times mentioned herein, the individual law enforcement officers involved in this incident were acting under color of state law and within the scope of their employment and/or authority as employees, agents, and/or servants for Defendant Carter County BOCC and/or Defendant Lone Grove.

10. In the alternative, Defendant Jones and Defendant Hensley were acting outside the scope of their respective employment,  such that the Oklahoma Governmental Tort Claims Act, 51 O.S. § 153(C) does not exempt Defendant Jones nor Defendant Hensley from personal liability for their tortious conduct.

11. Plaintiff has complied with all requirements under the Oklahoma Governmental Tort Claim Act, 51 O.S. § 151 et. seq.

12. This Court has jurisdiction over the parties hereto, jurisdiction over the subject-matter hereof, and venue is proper.

## FACTUAL BACKGROUND

Plaintiff further incorporates all previous allegations and statements and further alleges as follows:

13. This action arises from an incident that occurred on the night of March 3, 2018, at or near 587 Fruit Street, Lone Grove, Oklahoma, 73443.

14. On the evening of March 3, 2018, Defendant Lone Grove dispatched Defendant Hensley to

4

Graham's home at 587 Fruit Street, Lone Grove, Oklahoma, 73443 with the purpose of performing a welfare check on Graham.

15. Defendant Hensley requested backup and Defendant Jones was dispatched to assist Defendant Hensley.

16. At or around 1:00 a.m. Defendants Hensley and Jones arrived at Graham's residence in separate vehicles.

17. Neither Defendant Hensley nor Defendant Jones had their police sirens or their police lights on when they arrived at Graham's residence, and neither Defendant switched them on after arriving at Graham's residence.

18. Neither Defendant Hensley nor Defendant Jones announced their presence as police officers before or while they were knocking on the door of Graham's residence.

19. Graham was asleep when Defendant Hensley knocked loudly and called out Graham's name.

20. Graham reasonably believed that the individuals outside of his residence were potential intruders.

21. Graham was unable to see Defendants Hensley or Jones from the windows of his home or when he opened the door because (1) it was dark outside of Graham's residence, (2) neither Defendant Hensley nor Defendant Jones were standing in front of Graham's door, and (3) there was a light was shining directly at Graham.

22. Graham answered the door armed with a pistol, of which he was in lawful ownership.

23. Graham did not step outside of his home while armed.

24. Graham never fired his firearm and the use of his firearm was lawful "defensive force"

5

under the definition in 21 O.S. § 1289.25(J).

25. Defendants Hensley and Jones did not order Graham to drop his weapon or alert Graham of their identity as police officers performing a welfare check.

26. At or around 1:18 p.m., Defendant Hensley fired three shots at Graham striking him in the arm and the torso, from the front, and striking his refrigerator and other locations inside of his residence.

27. At no time did Graham pose an immediate threat of serious physical harm to either or both Defendants Hensley and Jones.

28. Neither Defendant Hensley nor Defendant Jones gave any warning to Graham that deadly force was about to be used on him prior to using deadly force against Graham.

29. Defendant Hensley's body cam was not on at the time of the incident, and Defendant Hensley knew of previous malfunctions of his body cam. Defendant Jones was not wearing a body cam.

30. As a result of Defendant Hensley and Defendant Jones' deliberate, indifferent, callous, outrageous, unreasonable, and negligent actions, Graham's body was struck by two (2) bullets which severely wounded his torso around his abdomen and right arm.

31. Emergency medical services transported Graham by ambulance to a helipad at Mercy Hospital in Ardmore and then by helicopter to Medical City in Denton, Texas.

32. Plaintiff was subsequently charged with felonious pointing of a firearm under 21 O.S. § 1289.16.

33. The State later dismissed the case against Plaintiff because Plaintiff's conduct was lawful

6

and did not constitute an illegal act.

34. No force or much less force could have been used by Defendants Hensley and Jones to gain control of the situation, rather than the unnecessary use of a deadly force to perform a welfare check.

35. Upon information received, Graham has reason to believe that Lone Grove Police Department and the Carter County Sherrif's Office's unconstitutional policies and practices, and inadequate training and supervision on use of force has resulted in the widespread use of excessive force on citizens.

36. Defendant Hensley inflicted unreasonable, unnecessary, excessive and negligent force upon Graham and failed to exercise the care of a reasonably prudent and qualified officer while engaged in an activity undertaken for the safety of the public.

37. The actions of Defendant Hensley establish that he was not properly trained regarding the use of force or, in the alternative, that he failed to follow such training and that the other Defendant Lone Grove and/or Defendant Oldham failed to properly enforce such policies.

38. Defendant Jones allowed unreasonable, unnecessary, excessive and negligent force to be inflicted upon Graham and failed to exercise the care of a reasonably prudent and qualified officer while engaged in an activity undertaken for the safety of the public.

39. The actions of Defendant Jones establish that he was not properly trained regarding the use of force or, in the alternative, that he failed to follow such training and that Defendant Carter County BOCC and/or Defendant Bryant failed to properly enforce such policies.

40. The actions of Defendant Hensley establish that he was not properly trained regarding the use

7

of deadly force or, in the alternative, that he failed to follow such training and that Defendant Lone Grove and/or Defendant Oldham failed to properly enforce such polices.

41. The actions of Defendant Jones establish that he was not properly trained regarding the use of deadly force or, in the alternative, that he failed to follow such training and that Defendant Carter County BOCC and/or Defendant Bryant failed to properly enforce such polices.

42. The above-described wrongful acts are proof of a policy in which Defendants deny citizens the rights, privileges, and immunity guaranteed to them by the United States Constitution, the laws of the United States, and the laws of Oklahoma.

43. This policy has no justification or excuse under the law but instead is improper, illegal, deliberately indifferent, and negligent and is unrelated to any activity in which law enforcement officers properly and legally carry out their sworn duty to enforce laws, protect persons and property, and ensure civil order.

44. Defendant Bryant, as Sheriff in Carter County, was aware or reasonably should have been aware of this policy and did not act to correct it, constituting negligent supervision and training.

45. Defendant Jones, as Chief of the Lone Grove Police Department, was aware or reasonably should have been aware of this policy and did not act to correct it, constituting negligent supervision and training.

46. Defendant Carter County BOCC, Defendant Lone Grove, Defendant Bryant, and Defendant Jones were negligent in the selection, appointment, training, supervision, and retention of their agents and employees, in that these Defendants knew or should have known their agents

8

and employees were carrying out these policies. These previously named Defendants directly or indirectly allowed an attitude that encouraged law enforcement officers to wrongfully use deadly force and to use tactics and procedures violating citizens' right to life, liberty, and property in a manner that is reckless, irresponsible, dangerous, and negligent to the community at large and to Graham and, in fact, had a policy of using unwarranted deadly force against citizens.

47. Despite Defendants Carter County BOCC, Lone Grove, Bryant, and Jones knowing (or reasonably should have known) that this policy was being carried out, failed to remove the individual Defendants Hensley and Jones, from their positions, to take any disciplinary action, or provide redress for citizens, such as Graham, who have been injured by such officers, and most importantly, put an end to the use of unwarranted deadly force against the community.

48. No reasonably competent law enforcement officer, with knowledge of the totality of the circumstances as Defendant Hensley and Defendant Jones reasonably understood them to be, could have reasonably believed Graham constituted a threat which required or authorized the use of such excessive deadly force.

49. No reasonably competent law enforcement officer, with knowledge of the totality of the circumstances as Defendant Hensley and Defendant Jones reasonably understood them to be, could have reasonably believed that the amount of force utilized was necessary or warranted in the situation.

50. No reasonably competent law enforcement officer, with knowledge of the totality of the circumstances, as Defendant Hensley and Defendant Jones reasonably understood them to

be, could have reasonably believed Graham needed to be shot.

51. The actions of Defendants were negligent, intentional, reckless, willful, and deliberate and showed gross and reckless disregard for Graham's rights.

52. Defendants' acts and omissions were a direct and proximate cause of the harm to Graham and his injuries.

53. The actions of Defendant Hensley and Defendant Jones were done willfully, maliciously, unlawfully, and with callous and reckless indifference in total disregard of Graham's safety and continued health. Therefore, Graham is entitled to compensatory, property damage and punitive damages along with his attorney's fees.

54. Graham has incurred necessary and reasonable medical and hospital expenses.

55. Graham will incur future medical care.

## COUNT I
## USE OF EXCESSIVE FORCE
## IN VIOLATION OF 42 U.S.C. § 1983

Plaintiff incorporates all previous allegations and statements and further alleges as follows:

56. Under the Fourth Amendment to the United States Constitution, every person in the United States of America has the right to be secure against unreasonable seizures of their person, and 42 U.S.C. § 1983 prevents individuals from acting in a government capacity or under color of law from unlawful deprivation of those rights.

57. Defendant Hensley's conduct on March 3rd, 2018, specifically, firing three (3) bullets at Graham, and thereby severely injuring Graham, in an attempt to perform a welfare check,

where the individual was not dangerous and posed no threat of physical harm to Defendant Hensley, Defendant Jones, or others, constitutes excessive force and is a deprivation of Graham's rights secured under the U.S. Constitution.

58. A reasonable law enforcement officer would know that the use of excessive force under these circumstances is a violation of constitutionally guaranteed rights and that a citizen's rights not to be subjected to such excessive force was clearly secured and established at the time Defendant Hensley shot Graham. See Graham v. Connor, 490 U.S. 386, 397 (1989); Tennessee v. Garner, 471 U.S. 1, 11–12 (1985).

59. At the time of the actions and/or omissions of Defendant Hensley, 22 O.S. § 34.1 defined "excessive force" as "force which exceeds the degree of physical force permitted by law or the policies and guidelines of the law enforcement entity."

60. It is not reasonable to use deadly force to apprehend an individual that does not pose an immediate threat to an officer or others. See Tennessee v. Garner, 471 U.S. 1, 11-12 (1985).

61. Defendant Hensley had a duty to refrain from violating Graham's constitutional rights.

62. Any reasonable law enforcement officer would have been aware that the conduct of Defendant Hensley, as described herein, would violate Graham's constitutional rights.

63. The force that Defendant Hensley used was excessive and unnecessary under the totality of the circumstances.

64. The excessive force used by Defendant Hensley upon Graham was not justified or privileged under clearly established law.

65. No legitimate law enforcement objective was accomplished by the degree of such force

11

utilized by Defendant Hensley.

66. Defendant Hensley's use of his firearm was objectively unreasonable, as well as intentional, willful, wanton, and in gross and reckless and negligent disregard of Graham's rights under the Fourth Amendment of the United States Constitution.

67. The use of force by Defendant Hensley against Graham posed a substantial risk of causing death or serious bodily harm that was known to Defendant Hensley at the time and did in fact cause great bodily harm.

68. The above-described conduct of Defendant Hensley was a direct and proximate cause of the deprivation of Graham's clearly established Fourth Amendment rights, as well as the resulting injuries, and damages described below.

69. Defendant Hensley, under color of law, unjustifiably used excessive force, and thus violated Graham's constitutional rights and is therefore, "liable...in an action at law, suit in equity, or other proper proceeding for redress...," as per 42 U.S.C. § 1983.

**COUNT II**
**FAILURE TO INTERVENE TO PREVENT**
**THE USE OF EXCESSIVE FORCE**
**IN VIOLATION OF 42 U.S.C. § 1983**

Plaintiff incorporates all previous allegations and statements and further alleges as follows:

70. Under the Fourth Amendment to the United States Constitution, every person in the United States of America has the right to be secure against unreasonable seizures of their person, and 42 U.S.C. § 1983 prevents individuals from acting in a government capacity or under color of law from unlawful deprivation of those rights.

71. Defendant Jones' conduct on March 3rd, 2018, specifically, failing to intervene to prevent Defendant Hensley from firing three (3) bullets at Graham, and thereby severely injuring Graham, in an attempt to perform a welfare check, where the individual was not dangerous and posed no threat of physical harm to Defendant Jones, Defendant Hensley, or others, is a deprivation of Graham's rights secured under the U.S. Constitution.

72. A reasonable law enforcement officer would know that the failure to intervene to prevent the use of excessive force under these circumstances is a violation of constitutionally guaranteed rights and that a citizen's rights not to be subjected to such excessive force, as well as a law enforcement official's affirmative duty to intervene to prevent the use of excessive force, were clearly secured and established at the time Defendant Jones failed to intervene to prevent Defendant Hensley from shooting and injuring Graham. See Graham v. Connor, 490 U.S. 386, 397 (1989); Mascorro v. Billings, 656 F.3d 1198, 1204 n. 5 (10th Cir. 2011); Mick v. Brewer, 76 F.3d 1127, 1138 (10th Cir. 1996).

73. At the time of Defendant Jones' failure to intervene, 22 O.S. § 34.1 defined "excessive force" as "force which exceeds the degree of physical force permitted by law or the policies and guidelines of the law enforcement entity."

74. It is not reasonable to use deadly force to apprehend an individual that does not pose an immediate threat to an officer or others. See Tennessee v. Garner, 471 U.S. 1, 11-12 (1985).

75. Defendant Jones had a duty to refrain from violating Graham's constitutional rights.

76. Any reasonable law enforcement officer would have been aware that the conduct of Defendant Jones, as described herein, would violate Graham's constitutional rights.

13

77. The force that Defendant Hensley used was excessive and unnecessary under the totality of the circumstances and Defendant Jones failed to intervene to prevent this use of force.

78. Defendant Jones' failure to intervene or prevent the excessive force used by Defendant Hensley upon Graham was not justified or privileged under clearly established law.

79. No legitimate law enforcement objective was accomplished by the degree of force utilized by Defendant Hensley and Defendant Jones' subsequent failure to intervene to prevent such force.

80. Defendant Jones' failure to intervene to prevent Defendant Hensley's use of excessive force was objectively unreasonable, as well as intentional, willful, wanton, and in gross and reckless and negligent disregard of Graham's rights under the Fourth Amendment of the United States Constitution.

81. Defendant Jones' failure to intervene to prevent the use of force by Defendant Hensley against Graham posed a substantial risk of causing death or serious bodily harm that was known to Defendant Jones at the time and did in fact cause great bodily harm.

82. The above-described conduct of Defendant Jones was a direct and proximate cause of the deprivation of Graham's clearly established Fourth Amendment rights, as well as the resulting injuries, and damages described below.

83. Defendant Jones, under color of law, unjustifiably failed to intervene to prevent the use excessive force, and thus violated Graham's constitutional rights and is therefore "liable...in an action at law, suit in equity, or other proper proceeding for redress...," as per 42 U.S.C. § 1983.

14

## COUNT III
## UNREASONABLE SEARCH AND SIEZURE
## IN VIOLATION OF 42 U.S.C. § 1983

Plaintiff incorporates all previous allegations and statements and further alleges as follows:

84. Under the Fourth Amendment to the United States Constitution, every person in the United States of America has the right to be secure against unreasonable seizures of their person, and 42 U.S.C. § 1983 prevents individuals from acting in a government capacity or under color of law from unlawful deprivation of those rights.

85. Defendant Hensley and Defendant Jones' conduct on March 3rd, 2018, specifically, failing to announce their authority as law enforcement officers and purpose when performing a welfare check on Graham, which resulted in Defendant Hensley firing three (3) bullets at Graham, thereby severely injuring Graham, where Graham was not dangerous and posed no threat of physical harm to Defendant Jones, Defendant Hensley, or others, is a deprivation of Graham's rights secured under the U.S. Constitution.

86. A reasonable law enforcement officer would know that the failure to announce their authority and purpose and then fire upon a resident during a welfare check, under these circumstances, is a violation of constitutionally guaranteed rights and that a citizen's rights not to be subjected to such unreasonable searches and seizures were clearly secured and established at the time of Defendant Hensley and Defendant Jones's conduct described herein. See U.S. v. Banks 540 U.S. 31, 35-37 (2003); Wilson v. Arkansas, 514 U.S. 927, 931 (1995).

15

87. It is not reasonable to perform a welfare check without following the established knock-and-announce principle. See U.S. v. Banks 540 U.S. 31, 35-37 (2003).

88. Defendant Hensley and Defendant Jones had a duty to refrain from violating Graham's constitutional rights.

89. Any reasonable law enforcement officer would have been aware that the conduct of Defendant Hensley and Defendant Jones, as described herein, would violate Graham's constitutional rights.

90. Defendant Hensley and Defendant Jones' failure to announce their authority and purpose and then subsequently shoot and injure of Graham was unreasonable and unjustified under the totality of the circumstances.

91. Defendant Hensley and Defendant Jones' failure to announce their authority and purpose was not justified or excused under clearly established law. See Richards v. Wisconsin, 520 U.S. 385, 395-95 (1997) (noting exceptions for the knock-and-announce requirement as exigent circumstances in which knocking and announcing would be "dangerous or futile" or if "it would inhibit the effective investigation of the crime by, for example, allowing the destruction of evidence").

92. Defendant Hensley and Defendant Jones' failure to announce their authority and purpose and then subsequently shoot and injure Graham was objectively unreasonable, as well as intentional, willful, wanton, and in gross and reckless and negligent disregard of Graham's rights under the Fourth Amendment of the United States Constitution.

93. Defendant Hensley and Defendant Jones' failure to announce their authority and purpose

16

and then subsequently shoot and injure Graham posed a substantial risk of causing death or serious bodily harm that was known to Defendant Hensley and Defendant Jones at the time and did in fact cause great bodily harm.

94. The above-described conduct of Defendant Hensley and Defendant Jones was a direct and proximate cause of the deprivation of Graham's clearly established Fourth Amendment rights, as well as the resulting injuries and damages described below.

95. Defendant Hensley and Defendant Jones, under color of law, unjustifiably failed to announce their authority as law enforcement officers and their purpose and subsequently shot and injured Graham, and thus violated Graham's constitutional rights and are therefore "liable...in an action at law, suit in equity, or other proper proceeding for redress...," as per 42 U.S.C. § 1983.

<u>COUNT IV</u>
<u>DELIBERATELY INDIFFIRENT POLICIES, PRACTICES<br>AND CUSTOMS, AND DELIBERATELY INDIFFERENT TRAINING AND<br>SUPERVISION IN VIOLATION OF 42 U.S.C. § 1983</u>

Plaintiff incorporates all previous allegations and statements and further alleges as follows:

96. Defendant Carter County BOCC, Defendant Lone Grove, Defendant Bryant, and Defendant Oldham were aware that pursuant to 22 O.S. § 34.1 "[e]ach law enforcement entity which employs any peace officer shall adopt policies and guidelines concerning the use of force by peace officers which shall be complied with by peace officers in carrying out the duties of such officers within the jurisdiction of the law enforcement entity."

97. The above-described conduct reflects an established policy, practice, custom, or decision,

officially adopted or informally accepted, ratified or condoned by Defendant Carter County BOCC, Defendant Lone Grove, Defendant Bryant, Defendant Oldham, and their officials and employees, that consists of arming police officers with dangerous weapons, such as firearms, without proper training and supervision as to their safe, reasonable and appropriate use.

98. It is clearly established law that Defendant Carter County BOCC, Defendant Lone Grove, Defendant Bryant, and Defendant Oldham must train and supervise sheriff's deputies, police officers, and other law enforcement personnel about proper procedures for welfare checks and the reasonable use of force, including, but not limited to, excessive force, to reduce the pervasive and unreasonable risk of grave constitutional injury.

99. Defendant Carter County BOCC, Defendant Lone Grove, Defendant Bryant, and Defendant Oldham each have an affirmative duty to take action to properly train and supervise their employees or agents and prevent their unlawful actions.

100. Defendant Carter County BOCC, Defendant Lone Grove, Defendant Bryant, and Defendant Oldham, respectively, failed to properly train and supervise their employees and agents in a manner, and to an extent, that amounts to deliberate indifference. Defendant Hensley and Defendant Jones engaged in the above-described conduct pursuant to this policy, practice, custom, or decision.

101. Defendant Bryant was the official policymaker and final decision-maker for Defendant Carter County BOCC in the area of law enforcement.

102. Defendant Oldham was the official policymaker and final decision-maker for Defendant

Lone Grove in the area of law enforcement.

103. Under information and belief, Defendant Carter County BOCC, Defendant Lone Grove, Defendant Bryant, and Defendant Oldham had a policy, custom, and procedure of not ensuring that officers like Defendant Hensley and Defendant Jones were appropriately and adequately trained as to when and under what circumstances to effectuate a welfare check and under what circumstances to use deadly force.

104. Upon information and belief, Defendant Carter County BOCC, Defendant Lone Grove, Defendant Bryant, and Defendant Oldham, acting through their subordinate law enforcement officers, had a persistent, widespread practice of depriving citizens of their constitutional rights that was sufficiently common and well established as to constitute municipal policy or custom.

105. Upon information and belief, these customs or policies of unconstitutional conduct, as shown by the acts and omissions of other subordinate law enforcement officers, permitted or condoned actions that have occurred for so long and with such frequency that the course of conduct demonstrates the governing body's knowledge and acceptance of such conduct.

106. Defendant Carter County BOCC, Defendant Lone Grove, Defendant Bryant, and Defendant Oldham understood that police officers, such as Defendant Hensley and Defendant Jones:

    a. could and would exceed constitutional limitations on the use of force;

    b. that the use of force may arise under circumstances that constitute a usual and recurring situation with which officers such as Defendant Hensley and Defendant

19

Jones must manage;

c. that providing inadequate training or failing to enforce existing policies under such circumstances demonstrates deliberate indifference on the part of the Defendants toward persons with whom Defendant Hensley and Defendant Jones would come into contact;

d. and that failing to provide such training or to enforce policies and procedures to ensure that Defendant Hensley and Defendant Jones followed such training would be a direct causal link between the constitutional deprivation to which citizens, such as Graham, would be exposed — in other words, when Defendants placed a firearm in the hands of Defendant Hensley and Defendant Jones and sent them out in the public domain, it was obvious that failing to adequately train officers or enforce policies and procedures would equate deliberate indifference to the rights of the public with whom they came into contact.

107. The above-described policies and customs of Defendant Carter County BOCC, Defendant Lone Grove, Defendant Bryant, and Defendant Oldham permitted or condoned the violation of Graham's rights, demonstrated deliberate indifference to the constitutional rights of the persons within the City and County and were the cause of the injuries and damages suffered by Graham.

108. Defendants also knew that absent the adoption of specific and/or adequate policies, procedures, and tactics governing law enforcement use of deadly force, and absent training of law enforcement officers in such policies, procedures, and tactics, it was highly predictable

20

that such failure to train would lead to law enforcement officers' violation of the Fourth Amendment rights of citizens, and could likely result in the otherwise avoidable injury of such citizens.

109.  Inadequate training and supervision of Defendant Hensley and Defendant Jones about the proper procedures to be used in performing a welfare check, the use of force, including, but not limited to, excessive force, was so likely to result in grave constitutional injury to citizens that the failure to provide adequate training and supervision to Defendant Hensley and Defendant Jones in these areas constituted a deliberate indifference to and acquiescence in such injury to Graham.

110.  Defendant Hensley and Defendant Jones received no form of discipline or reprimand from Defendant Carter County BOCC, Defendant Lone Grove, Defendant Bryant, and Defendant Oldham, respectively, for their above-described use of excessive force against Graham.

111.  Defendants ratified the conduct of Defendant Hensley and Defendant Jones in concluding that the conduct was consistent with the policies, procedures, and training of Defendant Carter County BOCC, Defendant Lone Grove, Defendant Bryant, or Defendant Oldham.

112.  Defendant Hensley and Defendant Jones' actions and/or inactions stem from the execution of a government policy, custom, or official decision of indifference as to the protection of citizens' constitutional rights and their actions can fairly be said to represent such a policy and custom.

113.  Defendant Bryant and Defendant Oldham's failure to ensure and accomplish or enforce such proper training caused Defendant Hensley and Defendant Jones to effectuate an

21

inappropriate/unlawful welfare check and to use excessive force in violation of the U.S. Constitution, proximately and directly causing serious injury to Graham.

## COUNT V
## NEGLIGENCE

Plaintiff incorporates all previous allegations and statements and further alleges as follows:

114. Defendant Hensley and Defendant Jones had a duty to act reasonably when encountering citizens, in an effort to prevent harm to Graham and others.

115. On March 3, 2018, Defendant Hensley and Defendant Jones acted unreasonably and negligently when he encountered Graham.

116. As a result of Defendant Hensley and Defendant Jones' choices and actions on March 3, 2018, Graham suffered serious injuries.

117. Defendant Hensley and Defendant Jones were acting within the scope of their employment at all relevant times, such that Defendant Carter County BOCC and Defendant Lone Grove, respectively, are liable for the damages caused to Graham under the Oklahoma Governmental Tort Claims Act.

118. In the alternative, Defendant Hensley and Defendant Jones were acting outside the scope of their employment at all relevant times, such that Defendant Hensley and Defendant Jones are personally liable for the damages caused to Graham.

## CAUSATION OF PLAINTIFFS' INJURIES AND DAMAGES

Plaintiff incorporates all previous allegations and statements and further alleges as follows:

22

119. The injuries and damages sustained by Graham, were produced in a natural and continuous sequence from Defendants' violation of one or more of the above described independent constitutional duties.

120. The injuries and damages sustained by Graham were a probable consequence from Defendants' violation of one or more of the above described independent duties.

121. Defendants should have foreseen and anticipated that a violation of one or more of the above- described independent duties would constitute an appreciable risk of harm to others, including Graham.

122. If Defendants had not violated one or more of the above-described independent duties, then Graham's injuries and damages would not have occurred.

## COMPENSATORY DAMAGES SUSTAINED BY PLAINTIFF

Plaintiff incorporates all previous allegations and statements and further alleges as follows:

123. The injuries and damages sustained by Graham as a result of Defendants' violations include but are not limited to the following:

   a. Graham's physical pain and suffering, past and future;

   b. Graham's mental pain and suffering, past and future;

   c. Graham's age;

   d. Graham's physical condition immediately before and after the accident;

   e. The nature and extent of Graham's injuries;

   f. Whether the injuries are permanent;

23

g. The physical impairment;

h. The disfigurement;

i. Loss of [earnings/time];

j. Impairment of earning capacity;

k. Damage to Graham's personal property;

l. The reasonable expenses of the necessary medical care, treatment, and services, past and future.

## AMOUNT OF DAMAGES

124. The Plaintiff's injuries and damages are in excess of the amount required for diversity jurisdiction under 28 U.S.C. 1332 (currently $75,000.00), plus attorney fees, interest, costs and all such other and further relief for which should be awarded as judgment against Defendants in an amount to fully and fairly compensate Plaintiff for each and every element of damages that has been suffered.

## PUNITIVE DAMAGES

Plaintiff incorporates all previous allegations and statements and further alleges as follows:

125. Plaintiff is entitled to punitive damages on their claims brought against individual Defendants pursuant to 42 U.S.C. § 1983 as Defendants' conduct, acts, and omissions alleged herein constitute reckless or callous indifference to Graham's federally protected rights.

## DEMAND FOR JURY TRIAL

126. The Plaintiff demands a jury trial for all issues of fact presented by this action.

## RESERVATION OF ADDITIONAL CLAIMS

127.    The Plaintiff reserves the right to plead further upon completion of discovery to

state additional claims and to name additional parties to this action.

WHEREFORE, Plaintiff, Travis Graham prays for judgment against Defendant Carter

County BOCC, Defendant Lone Grove, Defendant Bryant, Defendant Jones, Defendant Oldham,

and Defendant Hensley in a sum excess of the amount required for diversity jurisdiction under

28 U.S.C. § 1332 (currently $75,000.00) plus interest, costs, and all such other relief as to which

Plaintiff may be entitled.

Respectfully submitted,

LAIRD, HAMMONS, LAIRD, PLLC

Chris Hammons, OBA # 20233
Jason M. Hicks, OBA# 22176
1332 S.W. 89th Street
Oklahoma City, OK 73159
Telephone:    (405) 703-4567
Facsimile:     (405) 703-4061
E-mail: chris@lhllaw.com
           jason@lhllaw.com
ATTORNEYS FOR PLAINTIFF

**ATTORNEY LIEN CLAIMED**

25