# IN THE UNITED STATES DISTRICT COURT FOR THE
# EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| TRAVIS GRAHAM,<br>　　Plaintiff,<br><br>v.<br><br>CITY OF LONE GROVE, OKLAHOMA, an Oklahoma municipality,<br>BOARD OF COUNTY COMMISSIONERS FOR CARTER COUNTY, an Oklahoma political subdivision,<br>CHRIS BRYANT, in is official and individual capacities,<br>DAVID JONES, in his individual capacity,<br>ROBERT OLDHAM, in his official and individual capacities, and<br>GILBERT HENSLEY, in his individual capacity,<br>　　Defendants, | Case No. CIV-19-298-RAW |

## **ORDER**

This action arises from a shooting at the home of Travis Graham (hereinafter "Plaintiff") on March 3, 2018. Plaintiff brought this action on August 9, 2019 in the District Court of Carter County, Oklahoma. Defendants removed it to this court on September 4, 2019. Plaintiff filed an Amended Complaint on September 19, 2019. Plaintiff brings § 1983 claims of excessive force, failure to intervene to prevent the use of excessive force, unreasonable seizure, deliberately indifferent polices, practices and customs, and deliberately indifferent training and supervision. He also brings state law negligence claims.

Now before the court are the motions to dismiss filed by Carter County Board of County Commissioners (hereinafter "the County"), Carter County Sheriff Chris Bryant (hereinafter "Sheriff Bryant"), and Carter County Sheriff's Deputy David Jones (hereinafter "Deputy Jones")

[Docket No. 17], by Lone Grove Chief of Police Robert Oldham (hereinafter "Chief Oldham") in his individual capacity [Docket No. 18], and by the City of Lone Grove (hereinafter "the City") and Chief Oldham in his official capacity [Docket No. 19] and the partial motion to dismiss filed by Lone Grove Police Officer Gilbert Hensley (hereinafter "Officer Hensley") [Docket No. 21]. Defendants move for dismissal pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim. Three of the individual defendants have also asserted the defense of qualified immunity as to the § 1983 claims.

I. **Standard of Review**

For purposes of the motions to dismiss, the court accepts as true all of the factual allegations in Plaintiff's Amended Complaint and construes those facts in the light most favorable to Plaintiff. *See Anderson v. Merrill Lynch Pierce Fenner & Smith, Inc.*, 521 F.3d 1278, 1284 (10th Cir. 2008). Of course, the court does not accept as true conclusory statements or legal conclusions. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)( "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.")).

To survive the Rule 12(b)(6) motions to dismiss, the Amended Complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). Plaintiff must nudge his "claims across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570. The plausibility standard requires "more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678. "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Id.*

(quoting *Twombly*, 550 U.S. at 557) (internal quotations omitted). In other words, the well-pleaded facts must "permit the court to infer more than the mere possibility of misconduct." *Id.* at 679.

> [T]he *Twombly / Iqbal* standard is a middle ground between heightened fact pleading, which is expressly rejected, and allowing complaints that are no more than labels and conclusions or a formulaic recitation of the elements of a cause of action, which the Court stated will not do. In other words, Rule 8(a)(2) still lives. Under Rule 8, specific facts are not necessary; the statement need only give the defendant fair notice of what the claim is and the grounds upon which it rests.

*Burnett v. Mortgage Elec. Registration Sys., Inc.*, 706 F.3d 1231, 1235-36 (10th Cir. 2013) (quoting *Khalik v. United Air Lines*, 671 F.3d 1188, 1191 (10th Cir. 2012)).

**II.     Qualified Immunity Standard at the Motion to Dismiss Stage**

Qualified immunity "shields public officials from damages actions unless their conduct was unreasonable in light of clearly established law." *Turner v. Oklahoma Oklahoma Cnty. Bd. Of Cnty. Comm'rs.*, No. 19-6092, 2020 WL 995729, at *2 (10th Cir. 2020) (citation omitted). "Qualified immunity also applies to supervisory liability in § 1983 cases." *Id*. (citation omitted).

"Although qualified immunity defenses are typically resolved at the summary judgment stage, district courts may grant motions to dismiss on the basis of qualified immunity." *Myers v. Brewer*, 773 Fed.Appx. 1032, 1036 (10th Cir. 2019) (citing *Thomas v. Kaven*, 765 F.3d 1183, 1194 (10th Cir. 2014). At the motion to dismiss stage, however, defendants are subject "to a more challenging standard of review than would apply" at the summary judgment stage. *Id*. "At the motion to dismiss stage, it is the defendant's conduct *as alleged in the complaint* that is scrutinized for objective legal reasonableness." *Turner*, 2020 WL 995729, at *2 (citation omitted and emphasis added).

Accordingly, when a defendant raises a qualified immunity defense in response to a motion to dismiss, the court employs a two part test to determine whether Plaintiff (1) plausibly

pleaded that the defendant violated a constitutional right, and (2) shows that the constitutional right was clearly established at the time of the defendant's alleged misconduct. *Id.* at *3. The court has discretion to decide which of the two prongs to address first considering the circumstances of the case and need not address both. *Id*.

"A plaintiff may show clearly established law by pointing to either a Supreme Court or Tenth Circuit decision, or the weight of authority from other courts, existing at the time of the alleged violation." *Knopf v. Williams*, 884 F.3d 939, 944 (10th Cir. 2018) (citation omitted). A law is not clearly established unless existing precedent has "placed the statutory or constitutional question beyond debate." *Id.* (citation omitted). This is an objective test. *Brown*, 662 F.3d at 1164.

The court must not "define clearly established law at a high level of generality." *Mullenix v. Luna*, 136 S.Ct. 305, 308 (2015) (citing *Ashcroft*, 563 U.S. at 742); *Knopf*, 884 F.3d at 944 (citing *Ashcroft*, 563 U.S. at 742). Of course, a prior case need not have *identical* facts. *Perry v. Durborow*, 892 F.3d 1116, 1126 (10th Cir. 2018); *Patel v. Hall*, 849 F.3d 970, 980 (10th Cir. 2017). Still, the "clearly established law must be 'particularized' to the facts of the case." *Knopf*, 884 F.3d at 944 (citation omitted).

### III. **Allegations in the Amended Complaint**

Plaintiff alleges that on the night of March 3, 2018, Officer Hensley and Deputy Jones came to his residence to perform a welfare check. At around 1:00 a.m., they arrived in separate vehicles. They both knew that Plaintiff lawfully owned and possessed firearms. They both arrived without their police sirens or police lights activated. Neither of them ever activated their police sirens or lights. They could have, but they did not attempt to reach Plaintiff by phone or contact his close family member who lived directly across the street.

Neither Officer Hensley nor Deputy Jones announced their presence as police officers before or while they were knocking on the door of Plaintiff's home. They shined flashlights through the windows of Plaintiff's home. Plaintiff was asleep when they knocked loudly and called out his name.

Plaintiff believed they were potential intruders and feared for his life and property. Plaintiff was unable to see Officer Hensley or Jones through his windows or when he opened the door of his home, as it was dark, they were not standing in front of his door, and a light was shining directly at him.

Plaintiff answered the door armed with a pistol, but he did not point it directly at Officer Hensley or Deputy Jones. Plaintiff never fired the pistol and never stepped outside of his home while armed. Officer Hensley and Deputy Jones did not order Plaintiff to drop his weapon and did not identify themselves as police officers performing a welfare check. At or around 1:18 a.m., without warning, Defendant Hensley fired three shots at Plaintiff, striking him in the arm and torso from the front and striking his refrigerator and other locations inside his home.

Plaintiff was severely wounded in his abdomen and right arm. He was transported by ambulance to Mercy Hospital in Ardmore and then by helicopter to Medical City in Denton, Texas. Plaintiff was charged with felonious pointing of a firearm under 21 OKLA. STAT. § 1289.16, but the charges were dismissed because Plaintiff's conduct was lawful.

Plaintiff alleges that Deputy Jones had time, but that he failed to intervene to stop Officer Hensley from shooting Plaintiff. Plaintiff further alleges that Deputy Jones intended to and would have shot him if Officer Hensley had not done so. Plaintiff alleges that at no time did he pose an immediate threat of serious physical harm to Officer Hensley or Deputy Jones. Plaintiff

further alleges that little or no force could have been used by Officer Hensley and Deputy Jones to gain control of the situation.

Officer Hensley's body cam was not on, and he knew of previous malfunctions of his body cam. The City was aware that one of the purposes of body cams was to discourage officers from engaging in unconstitutional conduct. The City and Chief Oldham knew that Hensley's body cam did not function properly and did not attempt to provide Officer Hensley with a consistently functioning body cam. Deputy Jones was not wearing a body cam.

Plaintiff alleges that Chief Oldham was personally responsible for training Officer Hensley and establishing polices and customs in accordance with law. Plaintiff alleges that the actions of Officer Hensley on the night of March 3, 2018 are proof of the inadequate policies, customs, practices, training, and supervision by the City and Chief Oldham.

Plaintiff alleges that Sheriff Bryant was personally responsible for training Deputy Jones and establishing polices and customs in accordance with law. Plaintiff alleges that the actions of Deputy Jones on the night of March 3, 2018 are proof of the inadequate policies, customs, practices, training, and supervision by the County and Sheriff Bryant.

## IV.  **Individual Defendants**

### A. Officer Hensley[1]

Plaintiff brings § 1983 claims against Officer Hensley in his individual capacity for excessive force and for unreasonable seizure pursuant to the Fourth Amendment. Plaintiff also brings state law negligence claims against Officer Hensley in his individual capacity. Plaintiff pleads the negligence claims in the alternative, alleging that either Officer Hensley acted outside the scope of his employment and thus is individually liable or acted within the scope of his

---

[1] Docket Nos. 21, 27, and 33.

employment and thus the City is liable.[2]  Officer Hensley moves for dismissal of the negligence claims only.[3]

Officer Hensley argues that Plaintiff failed to plausibly plead a state law negligence claim against him or that he acted outside the scope of his employment.[4]  The court does not agree. "The elements of negligence are (1) the existence of a duty on the part of a defendant to protect the plaintiff from injury; (2) a violation of that duty; and (3) injury proximately resulting from the violation." *Tomlinson v. Love's Country Store, Inc.*, 854 P.2d 910, at 915 (Okla. 1993).

Plaintiff alleges that Officer Hensley and Defendant Jones had a duty to act reasonably when encountering citizens in an effort to prevent harm to them.  Plaintiff alleges that Officer Hensley was called to do a welfare check on Plaintiff and that he knew Plaintiff lawfully possessed firearms.  Plaintiff alleges that Officer Hensley approached Plaintiff's home without any police lights or police sirens.  Plaintiff alleges that without ever identifying himself as a police officer, Officer Hensley walked around Plaintiff's home, shined light in his windows, knocked loudly on his door, and called out his name.  Plaintiff alleges that being in fear for his life and property, he opened his door armed with a pistol.  Without warning, without ordering Plaintiff to drop his weapon, and without identifying himself as a police officer, Officer Hensley then fired three shots at Plaintiff.  Plaintiff alleges that he never pointed the gun directly at Officer Hensley.

---

[2] A plaintiff may seek relief in the alternative.  Fed. R. Civ. P. 8(a)(3).
[3] Officer Hensley filed an Answer to the § 1983 claims.  Docket No. 20.
[4] Noting that Officer Hensley and the City are represented by the same counsel, Plaintiff offered to dismiss the negligence claims against Officer Hensley in his individual capacity if the City would stipulate that all of Officer Hensley's relevant conduct was within the scope of his employment.  Officer Hensley did not respond to Plaintiff's offer.

Officer Hensley argues that Plaintiff kicked the door out and pointed the pistol directly at his face. This alleged fact, however, is in direct contrast to Plaintiff's allegations, and thus inappropriate at the motion to dismiss stage. Moreover, even if Plaintiff kicked the door out and pointed the pistol directly at Officer Hensley's face, Plaintiff pleaded that Officer Hensley's actions leading up to that moment were negligent and caused the situation. The Amended Complaint contains sufficient facts to state a claim for negligence against Officer Hensley.

Moreover, the Amended Complaint contains sufficient facts to state a claim for negligence against Officer Hensley individually for acts *outside the scope of his employment*. "Except in cases where only one reasonable conclusion can be drawn, the question of whether an employee has acted within the scope of employment at any given time is a question for the trier of fact." *Checoweth v. City of Miami*, 240 P.3d 1080, 1084 (Okla. Civ. App. 2010). "Accordingly, while this issue may be adjudicated upon consideration of a summary judgment motion, *it cannot properly be determined in a motion to dismiss*." *Tilghman v. Kriby*, No. CIV-13-73-D, 2013 WL 6092529, at *3 (Nov. 19, 2013) (emphasis added). Plaintiff plausibly pleaded his claims in the alternative. Accordingly, Officer Hensley's motion is denied.

### B. Deputy Jones[5]

Plaintiff brings § 1983 claims against Deputy Jones in his individual capacity for failure to intervene to prevent the use of excessive force and for unreasonable seizure pursuant to the Fourth Amendment. Plaintiff also brings state law negligence claims against Deputy Jones in his individual capacity. Plaintiff pleaded the negligence claims in the alternative, alleging that either Deputy Jones acted outside the scope of his employment and thus is individually liable or acted

---

[5] Docket Nos. 17, 23, and 25.

within the scope of his employment and thus the County is liable.[6]  Deputy Jones moves for dismissal of all claims against him, arguing that Plaintiff failed to state a claim and asserting the defense of qualified immunity as to the § 1983 claims.

*Negligence Claims*

The court first addresses the negligence claims.  Plaintiff alleges that Deputy Jones was called to assist Officer Hensley on a welfare check at Plaintiff's home.  Deputy Jones knew Plaintiff lawfully possessed firearms.  Deputy Jones approached Plaintiff's home without any police lights or police sirens.  Without ever identifying himself as a law enforcement officer, Deputy Jones walked around Plaintiff's home and shined light in his windows.  Officer Hensley knocked loudly on Plaintiff's door and called out his name.  Plaintiff alleges that being in fear for his life and property, he opened his door armed with a pistol.  Without warning, Officer Hensley then fired three shots at Plaintiff.  Plaintiff alleges that he never pointed the gun directly at Officer Hensley.  Plaintiff alleges that before he was shot, neither Officer Hensley nor Deputy Jones identified themselves as law enforcement or ordered him to drop his weapon.

Plaintiff plausibly pleaded negligence claims against Deputy Jones.  Moreover, the Amended Complaint contains sufficient facts to state a claim against Deputy Jones individually for acts *outside the scope of his employment*.  The court reiterates that "[e]xcept in cases where only one reasonable conclusion can be drawn, the question of whether an employee has acted within the scope of employment at any given time is a question for the trier of fact." *Checoweth*, 240 P.3d at 1084.  This issue is may be re-urged at the summary judgment stage, but it cannot properly be determined here. *Tilghman*, 2013 WL 6092529, at *3.  Deputy Jones' motion to dismiss the negligence claims is denied.

---

[6] As noted above, a plaintiff may seek relief in the alternative.  Fed. R. Civ. P. 8(a)(3).

### *Fourth Amendment Claims & Qualified Immunity*

Plaintiff alleged that Deputy Jones failed to intervene to prevent Officer Hensley from violating his Fourth Amendment rights against excessive force and unreasonable seizure. Deputy Jones recognizes that "[a]n officer who fails to intervene to prevent a fellow officer's excessive use of force may be liable under § 1983." *Fogarty v. Gallegos*, 523 F.3d 1147, 1162 (10th Cir. 2008). The Tenth Circuit held that this duty is clearly established law. *Id*. Nevertheless, Deputy Jones argues that Plaintiff failed to plausibly plead that Officer Hensley violated Plaintiff's Fourth Amendment rights and that Deputy Jones had a realistic opportunity to intervene, but failed to do so. Deputy Jones further argues that he is entitled to qualified immunity. The court does not agree.

Plaintiff stated a § 1983 claim for excessive force and unreasonable seizure against Officer Hensley. "[*A*]*ll* claims that law enforcement officers have used excessive force—deadly or not—in the court of an arrest, investigatory stop, or other 'seizure' of a free citizen should be analyzed under the Fourth Amendment and its 'reasonableness' standard." *Pauly v. White*, 874 F.3d 1197, 1214-15 (10th Cir. 2017)(citing *Graham v. Connor*, 490 U.S. 386, 395 (1989))(emphasis in original). This is an objective reasonableness standard, "judged from the perspective of a reasonable officer on the scene, rather than with 20/20 vision of hindsight." *Id*. at 1215. The court "must balance the nature and quality of the intrusion on the individual's Fourth Amendment interests against the importance of the governmental interests alleged to justify the intrusion." *Id*. (citing *Graham*, 490 U.S. at 396. The court considers the facts and circumstances of each particular case, "including *the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight*." *Id*. (citing *Graham*, 490 U.S. at

396)(emphasis in original). "Ultimately, 'the inquiry is always whether, from the perspective of a reasonable officer on the scene, the totality of the circumstances justified the use of force.'" *Id*. (citation omitted).

The first and third *Graham* factors – "the severity of the crime at issue" and "whether he is actively resisting arrest or attempting to evade arrest by flight" – weigh in favor of Plaintiff. He had committed no crime and was in his home sleeping. Officer Hensley and Deputy Jones were there to perform a welfare check. The second *Graham* factor – "whether the suspect posed an immediate threat to the safety of the officers or others" – is more fact intensive and also weighs in favor of Plaintiff.

In evaluating a threat to officers, the court must utilize the following four-part test: "(1) whether the officers ordered the suspect to drop his weapon, and the suspect's compliance with police commands; (2) whether any hostile motions were made with the weapon towards the officers; (3) the distance separating the officers and the suspect; and (4) the manifest intentions of the suspect." *Id*. at 1216 (citing *Estate of Larsen v. Murr*, 511 F.3d 1255, (10th Cir. 2008).

Accepting as true all of the allegations in the Amended Complaint, (1) not only did Officer Hensley and Deputy Jones not order Plaintiff to drop his weapon, they never informed him or gave him any means of knowing that they were law enforcement; (2) although Plaintiff opened his door while armed with a pistol, he made no hostile motions toward Officer Hensley and Deputy Jones; (3) Officer Hensley and Deputy Jones were not directly in front of Plaintiff's door when he opened it, and they were shining light in his face; and (4) Plaintiff's manifest intentions were to protect himself from intruders.

Additionally, "[t]he reasonableness of the use of force depends not only on whether the officers were in danger at the precise moment that they used force, but also on whether the

11

officers' own 'reckless or deliberate conduct during the seizure unreasonably created the need to use such force.'" *Id*. at 1219. An officer's conduct prior to a suspect threatening force 'is only actionable if it rises to the level of recklessness.'" *Id*. (citation omitted). Mere negligence "will not suffice." *Id*. (citation omitted).

Plaintiff alleged that Officer Hensley and Deputy Jones arrived at his home to do a welfare check, but never activated their police sirens or lights and never once identified themselves as law enforcement. They walked around his home, shined lights in his windows, knocked loudly on his door, and called out his name. As Plaintiff argues, in Oklahoma, individuals have the right to protect their homes with force. Defendants knew Plaintiff lawfully owned firearms. As alleged, Defendants recklessly created a situation that would frighten a reasonable individual in his home. Then when Plaintiff opened the door armed to defend himself, Officer Hensley shot him. Plaintiff alleges that Deputy Jones had plenty of time, 18 minutes to be exact, to change the situation and stop Officer Hensley from shooting an innocent man.

Deputy Jones argues that Plaintiff did not plead with specificity the amount of time between his opening the door and being shot. Such additional facts are not necessary. As Plaintiff argues, both of these Defendants' pre-seizure conduct created the situation that caused his injuries. Plaintiff alleges that Deputy Jones had sufficient awareness of Officer Hensley's actions and had time to intervene. Moreover, Rule 8 still lives. The Amended Complaint gives Deputy Jones fair notice of what the claim is and the grounds upon which it rests. Plaintiff has sufficiently pleaded that Officer Hensley violated his Fourth Amendment rights and that Deputy Jones failed to intervene and is thus liable under § 1983.

Plaintiff has also pointed to clearly established law. The facts of the *Pauly* case cited by Plaintiff are very similar to the facts here. In that case, Daniel Pauly was involved in a road rage incident with two females on an interstate highway. *Id*. at 1203. One of the women called 911 and reported him as being drunk, "swerving all crazy," and turning his lights off and on. The women then followed him closely until he came to a stop at an exit. *Id*. Daniel asked why there following him so close, and one of the women claimed he was "throwing up gang signs." After the encounter, Daniel went to his home a short distance away in a rural wooded area on a hill behind another house where he lived with his brother Samuel. *Id*.

Police later met with the women at the exit where they spoke with Daniel. *Id*. The women said that Daniel was driving recklessly, described his vehicle, and provided his license plate number. *Id*. The women then left. *Id*. Three officers agreed that there was not enough evidence or probable cause to arrest Daniel and that no exigent circumstances existed at the time. *Id*. at 1203-04. Nevertheless, they decided to try to speak to Daniel to get his side of the story, "to make sure nothing else happened," and to find out if he was intoxicated. *Id*. at 1204. One of the three officers stayed at the exit in case Daniel returned. *Id*. The other two officers took separate patrol units to the address associated with Daniel's license plate number to see if they could locate Daniel's pickup truck. *Id*.

At 11:14 p.m. the two officers parked along the road in front of the house in front of Daniel's. *Id*. Neither activated their police lights. *Id*. They walked toward the home of Daniel and Samuel. *Id*. When they located Daniel's truck, the contacted the third officer who left to join them. *Id*. The third officer arrived at 11:16 p.m. *Id*.

The Pauly brothers could see "through the front window two blue LED flashlights, five or seven feet apart, at chest level, coming towards the house." *Id*. "Daniel could not tell who

13

was holding the flashlight approaching the house because of the dark and the rain, but he feared it could be intruders related to the prior road rage altercation." *Id*. It did not occur to Daniel that the figures could have been police officers. *Id*. The Pauly brothers hollered several times, "Who are you?" and "What do you want?" *Id*. In response, the officers laughed and said, "Hey, (expletive), we got you surrounded. Come out or we're coming in." *Id*. One officer shouted once: "Open the door, State Police, Open the door," but the brothers did not hear it. *Id*.

Fearing for their lives and their dogs' lives, the brothers decided to call 911, but before they could, they heard someone yell, "We're coming in. We're coming in." *Id*. at 1204-05. Believing a home invasion was imminent, Samuel retrieved firearms for them both. *Id*. at 1205. Daniel told Samuel he would fire some warning shots while Samuel went back to the front of the house. *Id*. One of the brothers then shouted, "We have guns." *Id*. One officer positioned himself towards the rear of the house and shouted, "Open the door, come outside," while another officer drew his weapon and took cover behind a stone. *Id*. Another officer took cover behind one of the brothers' trucks. *Id*.

Daniel stepped partially out of the back door and fired two warning shots while screaming loudly to scare anyone away. *Id*. After hearing the shots, one officer thought another had been hit. *Id*. A few seconds after the warning shots, two officers observed Samuel open the front window and point a handgun in an officer's direction. *Id*. One officer shot immediately and missed. *Id*. The other officer shot Samuel. *Id*. The entire incident took less than five minutes. *Id*.

The Tenth Circuit held that the use of deadly force under these facts and circumstances was not objectionably reasonable and violated Samuel Pauly's constitutional right to be free from excessive force. *Id*. at 1222. The Court also held that "§ 1983 not only imposes liability on

those who actually deprive a person of their rights under the Constitution, but also imposes a liability on those who 'cause' a person to be subjected to a deprivation." *Id*. at 1223. "The requisite causal connection is satisfied if the defendant[s] set in motion a series of events that the defendant[s] knew or reasonably should have known would cause others to deprive the plaintiff of [his] constitutional rights." *Id*. (citation omitted).

The *Pauly* case is not *identical* to the one now before the court – Plaintiff was not even a suspect, and Officer Hensley and Deputy Jones did not even once announce that they were law enforcement – but it is most certainly "particularized" to the facts of this case. Deputy Jones' motion is denied.[7]

## V. Supervisory Defendants, in their Official Capacities

Plaintiff brings claims against Chief Oldham[8] and Sheriff Bryant in their official capacities for deliberately indifferent policies, practices, and customs and for deliberately indifferent training and supervision. City and county employees "may be sued in their official capacity." *Meade v. Grubbs*, 841 F.2d 1512, 1529 (10th Cir. 1988). An official capacity claim "is essentially another way of pleading an action against the county or municipality." *Porro v. Barnes*, 624 F.3d 1322, 1328 (10th Cir. 2010). A city or county is not liable under the doctrine of respondeat superior; it is liable only if its employees deprived an individual of his

---

[7] The court notes that the *Pauly* court found no clearly established law and granted qualified immunity to each of the officers on that basis. *Id*. at 1222-23. Based on the *Pauly* court's findings of constitutional violations under facts remarkably similar to those here, however, clearly established law now exists in this case.

[8] Chief Oldham initially argues that the § 1983 claims against him in his official capacity are unnecessary and redundant because the City is also a defendant. Plaintiff, however, did not bring the § 1983 claims against the City. Plaintiff brought only negligence claims against the City. Chief Oldham seems to abandon this argument in his reply. In any event, as Plaintiff did not bring the § 1983 claims against the City, the court will not dismiss the § 1983 claims against Chief Oldham on this basis.

15

constitutional rights pursuant to a policy or custom of the city or county. *Monell v. Department of Soc. Servs.*, 436 U.S. 658, 690-91 (1978). "Such a custom or policy may include its continuing failure to train, supervise, or discipline its police force." *Varela v. Jones*, 746 F.2d 1413, 1418 (10th Cir. 1984).

A county or municipality may be held liable "under § 1983 only where its policies are the 'moving force [behind] the constitutional violation.'" *City of Canton v. Harris*, 489 U.S. 378, 288-89 (1989) (citing *Monell*, 436 at 694). "[T]he inadequacy of police training may serve as a basis for § 1983 liability only where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact. *Allen v. Muskogee*, 119 F.3d 837, 842 (10th Cir. 1997) (citing *City of Canton*, 489 U.S. at 388).

To hold a municipality liable under § 1983 for failure to train, supervise, or discipline its officers in the use of force, Plaintiff must have plausibly alleged that: "(1) the officers exceeded constitutional limitations on the use of force; (2) the use of force arose under circumstances that constitute a usual and recurring situation with which police officers must deal; (3) the inadequate training demonstrates a deliberate indifference on the part of the city toward persons with whom the police officers come into contact; and (4) there is a direct causal link between the constitutional deprivation and the inadequate triaining." *Id.* at 841-42 (citing *Zuchel v. City and County of Denver*, 997 F.2d 730, 734-35 (10th Cir. 2003)).

Because the allegations against Chief Oldham[9] and Sheriff Bryant[10] are so similar, the court analyzes them together.[11] Plaintiff has alleged that Chief Oldham and Sheriff Bryant were

---

[9] Docket Nos. 19, 26, and 32.
[10] Docket Nos. 17, 23, and 25.
[11] The court recognizes that Plaintiff includes additional allegations against Chief Oldham regarding Officer Hensley's body cam, but the court need not include those in its Rule 12(b)(6) analysis.

16

deliberately indifferent in having policies, customs, and procedures of not ensuring that their officers and deputies were appropriately and adequately trained as to how to properly effectuate a welfare check and as to when and under what circumstances to use deadly force.

As to the first element, the court has already determined that Plaintiff plausibly alleged that Officer Hensley and Deputy Jones violated his Fourth Amendment rights. As to the second element, the court agrees that it is axiomatic that welfare checks and the use of deadly force are usual and recurring situations with which law enforcement must deal.

As to the third element, deliberate indifference "means an act or omission purposefully committed by a person who must have realized that the conduct was unnecessarily dangerous or which conduct was done heedlessly or recklessly, without regard to the consequences, or without regard to the rights and safety of others." *Id*. at 735. "[A] showing of specific incidents which establish a pattern of constitutional violations is not necessary to put the City on notice that its training program is inadequate. Rather, evidence of a single violation of federal rights, accompanied by a showing that a municipality has failed to train its employees to handle recurring situations presenting an obvious potential for such a violation, is sufficient to trigger municipal liability." *Id*. at 842. Plaintiff plausibly alleged that the violations against him by Officer Hensley and Deputy Jones are sufficient to show deliberate indifference by Chief Oldham and Sheriff Bryant in their policies regarding training. As to the fourth element, Plaintiff plausibly alleged a direct causal link between the alleged constitutional deprivation and the inadequate training.

The court finds that Plaintiff plausibly pleaded the deliberate indifference claims against Chief Oldham and Sheriff Bryant in their official capacities. Accordingly, their motions to dismiss are hereby denied.

## VI. Supervisory Defendants, in their Individual Capacities

Plaintiff also brings his § 1983 deliberate indifference claims against Chief Oldham[12] and Sheriff Bryant[13] in their individual capacities, arguing that they held policies, customs, and procedures of not adequately training their officers and deputies as to how to properly effectuate welfare checks and as to when and under what circumstances to use deadly force. To plausibly plead his claims, Plaintiff must allege "an 'affirmative link' between the supervisor and the constitutional violation." *Schneider v. City of Grand Junction*, 717 F.3d 760, 767 (2013). The three elements required to allege an affirmative link are: (1) personal involvement; (2) causation; and (3) state of mind." *Id*.

Plaintiff alleged that Chief Oldham was personally responsible for training Deputy Hensley and establishing policies and customs in accordance with constitutional law. Plaintiff alleged that Sheriff Bryant was personally responsible for training Deputy Jones and establishing policies and customs in accordance with constitutional law. Plaintiff alleged that Chief Oldham's and Sheriff Bryant's actions and/or failures were a moving force behind his injuries. Plaintiff alleged that Chief Oldham and Sheriff Bryant were aware or reasonably should have been aware of their unconstitutional policies or customs and did not act to correct them. Plaintiff has plausibly alleged his § 1983 claims against both Chief Oldham and Sheriff Bryant.

As Chief Oldham and Sheriff Bryant have asserted the defense of qualified immunity, the court now turns to whether Plaintiff has shown that the constitutional right was clearly established at the time of the alleged violation. Plaintiff must show clearly established law "particularized"' to the facts of his case against Chief Oldham and Sheriff Bryant.

---

[12] Docket Nos. 18, 28, and 34.
[13] Docket Nos. 17, 23, and 25.

Plaintiff did not respond to Sheriff Bryant's qualified immunity defense. In his response to Chief Oldham's motion, Plaintiff points to *Allen v. Muskogee*, 119 F.3d 837 (10th Cir. 1997) and *Brown v. Gray*, 227 F.3d 1278 (10th Cir. 2000), arguing that these cases show the clearly established law upon which he relies. *Allen* establishes that a municipality is responsible for properly training its officers on how to approach a potentially suicidal man. While *Allen* does not address a police chief sued in his individual capacity, it does establish a chief's responsibility to train his officers *with regard to a potentially suicidal man*. Plaintiff was potentially suicidal[14]; however, his claims are based primarily on the fact that Officer Hensley and Deputy Jones were not trained to identify themselves or otherwise let it be known that they are law enforcement when approaching a home. In *Allen*, the suicidal man was in his car and could clearly see that he was interacting with law enforcement. *Allen* involved very different circumstances than the ones now before the court and does not provide clearly established law with regard to Chief Oldham's or Sheriff Bryant's duties to train in this case.

*Brown* involved training regarding taking police action while off-shift. It also involved very different circumstances than the ones now before the court and does not provide clearly established law here. Because Plaintiff has not shown clearly established law, both Chief Oldham and Sheriff Bryant are entitled to qualified immunity. Accordingly, their motions are granted.

## VII. Governing Entities

Plaintiff brings state law negligence claims against both the City and the County. Plaintiff pleads the negligence claims in the alternative, alleging that either Officer Hensley and Sheriff Bryant acted outside the scope of their employment and thus are individually liable or

---

[14] This fact is not included in the Amended Complaint. It is referenced in the parties' briefing.

19

they acted within the scope of their employment and thus the City and the County, respectively, are liable. As the court held above, Plaintiff plausibly pleaded state law negligence claims in the alternative. As to whether they acted outside or within the scope of their employment, that question may be addressed at the summary judgment stage. The motions to dismiss by the City and the County, therefore, are DENIED.

## VIII. Conclusion

For the reasons set forth herein, the partial motion to dismiss filed by Officer Hensley [Docket No. 21] is hereby DENIED. The motion to dismiss by Chief Oldham in his individual capacity [Docket No. 18] is hereby GRANTED. The motion to dismiss filed by the City, and Chief Oldham in his official capacity [Docket No. 19] is hereby DENIED.

The motion to dismiss filed by the County, Sheriff Bryant, and Deputy Jones [Docket No. 17] is hereby DENIED as to the County, Sheriff Bryant in his official capacity, and Deputy Jones. It is GRANTED as to Sheriff Bryant in this individual capacity.

**IT IS SO ORDERED** this 25th day of March, 2020.

**THE HONORABLE RONALD A. WHITE**
**UNITED STATES DISTRICT JUDGE**
**EASTERN DISTRICT OF OKLAHOMA**