**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF OKLAHOMA**

**TRAVIS GRAHAM,**

                        *Plaintiff,*

**v.**                                                          **Case No. 19-CV-298-JFH**

**CITY OF LONE GROVE, OKLAHOMA,**
*et al.*,

                        *Defendants.*

## MEMORANDUM AND ORDER

This matter comes before the Court on the Motions for Summary Judgment of Chris Bryant (Doc. 101); the Board of County Commissioners for Carter County, Oklahoma, and David Jones (Doc. 103); the City of Lone Grove, Oklahoma, and Robert Oldham (Doc. 119); and Gilbert Hensley (Doc. 120). For the reasons set forth below, the Court grants in part and denies in part these Motions.

## BACKGROUND

The case arises from an incident in which Lone Grove Police Officer Gilbert Hensley shot Travis Graham while conducting a welfare check at Mr. Graham's residence. Carter County Sheriff's Deputy David Jones was at the scene providing backup. As a result of the shooting, Mr. Graham filed suit against Officer Hensley, Deputy Jones, the Lone Grove Chief of Police Robert Oldham, the City of Lone Grove, Oklahoma ("Lone Grove"), the Carter County Sheriff Chris Bryant, and the Board of County Commissioners for Carter County, Oklahoma ("Carter County").

Mr. Graham asserts five causes of action pursuant to 42 U.S.C. § 1983 and state law: (1) use of excessive force against Officer Hensley; (2) failure to intervene against Deputy Jones; (3) unreasonable search and seizure against Officer Hensley and Deputy Jones; (4) deliberately indifferent policies, practices, customs, training, and supervision against Chief Oldham and Sheriff

Bryant in their official capacities; and (5) negligence against Officer Hensley and Deputy Jones, or, alternatively, against Lone Grove and Carter County.  All Defendants have moved for summary judgment on all causes of action.

## LEGAL STANDARD

Pursuant to Federal Rule of Civil Procedure 56(a), "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  A fact is genuinely disputed "when the evidence is such that a reasonable jury could return a verdict for the nonmoving party, and a fact is material when it might affect the outcome of the suit under the governing substantive law."[1] When the Court applies this standard, it "view[s] the evidence and make[s] inferences in the light most favorable to the non-movant."[2]

The movant bears the initial burden of demonstrating the absence of a genuine issue of material fact and its entitlement to judgment as a matter of law.[3]  If the movant carries this initial burden, "the burden shifts to the nonmovant to go beyond the pleadings and set forth specific facts that would be admissible in evidence in the event of a trial from which a rational trier of fact could find for the nonmovant."[4] If the evidence is such that a reasonable jury could return a verdict for the nonmovant, summary judgment is improper.[5]

## UNDISPUTED MATERIAL FACTS

---

[1] *Bird v. W. Valley City*, 832 F.3d 1188, 1199 (10th Cir. 2016) (internal quotation marks and citation omitted).

[2] *Nahno-Lopez v. Houser*, 625 F.3d 1279, 1283 (10th Cir. 2010).

[3] *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670–71 (10th Cir. 1998) (citation omitted).

[4] *Id.* at 671 (internal quotation marks and citation omitted).

[5] Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

The material facts which follow are not disputed by the parties.  Prior to the night of the shooting, Officer Hensley had interacted in his capacity as a law enforcement officer with Mr. Graham on multiple occasions.  These interactions were generally without incident, and Officer Hensley believed the two had a good rapport.

**The shooting**

On March 3, 2018, Mr. Graham called Kelleigh Schoonover, his former girlfriend, to tell her goodbye and that he was "done."  Ms. Schoonover believed Mr. Graham was going to kill himself.  At approximately 12:51 a.m., Crystal Stephenson, a friend of Ms. Schoonover, reported to the Lone Grove Police Department that Mr. Graham was suicidal and requested that a welfare check be conducted.  Officer Hensley was dispatched to Mr. Graham's residence and called Ms. Schoonover to obtain more information.  She informed Officer Hensley that Mr. Graham was intoxicated and had firearms in his possession.  Prior to arriving at Mr. Graham's residence, Officer Hensley requested backup and met Deputy Jones at a nearby farmer's market.

The officers arrived at Mr. Graham's residence at some time around 1:00 a.m.    It was dark.  Officer Hensley and Deputy Jones approached the residence separately.  Officer Hensley arrived first and was nearing the front of the residence as Deputy Jones parked and exited his vehicle.  Neither officer activated his patrol lights or sirens.  Both officers were wearing law enforcement uniforms and had their flashlights out.  Officer Hensley approached the residence toward the south end of the home and began knocking on the front door.  Deputy Jones saw movement towards the rear of the home and circled around to the back where he observed a dog. While behind the home, Deputy Jones could hear Officer Hensley knocking on the door and speaking but could not hear specifically what was said.    Deputy Jones then returned to the front of the residence.

Officer Hensley continued to knock on the door, but there was no response from Mr. Graham.  After some period of time, the door to the residence opened and Mr. Graham appeared, holding a firearm.  Officer Hensley then fired three shots at Mr. Graham.  Approximately one second elapsed from the time Mr. Graham opened the door to the time Officer Hensley fired the shots.[6]  Deputy Jones then entered Mr. Graham's residence to secure Mr. Graham and his weapon.

**Policy, custom, and training**

Prior to the present matter, Officer Hensley had never used deadly force.   He has been a CLEET certified law enforcement officer since 2009, and in the interim period, has had approximately 684 hours of law enforcement training.   Lone Grove provides its officers training programs which address the use of force, encountering those with mental health issues, encountering those who are intoxicated, and conducting welfare checks on those who are potentially suicidal.  Chief Oldham reviews Officer Hensley's training transcripts once a year. Pursuant to Lone Grove's use of deadly force policy, an officer is authorized to use deadly force if the officer reasonably believes his or her life is in jeopardy and deadly force is immediately necessary to preserve his or her life.  An officer is also authorized to use deadly force if the officer reasonably believes the life of another is in jeopardy and deadly force is immediately necessary to preserve the life of another.

Deputy Jones is a CLEET certified law enforcement officer with dozens of hours of CLEET training in areas such as firearms, search and seizure, tactical patrol, and mental illness.

---

[6]  Mr. Graham asserts that this fact is disputed but offers no evidence to meaningfully contradict the deposition testimony of Officer Hensley and Deputy Jones.  A party asserting that a fact is disputed "must support the assertion by citing to particular parts of materials in the record." Fed. R. Civ. P. 56(c)(1).  Mr. Graham does not do so but instead cites to Officer Hensley's deposition testimony which states the time period was "not even a second." *See* Dkt. No. 114, ¶ 22 (citing Dkt. No. 114-1, 158: 2–3).  Where a party fails to properly support its assertion that a fact is disputed, that fact may be considered undisputed for the purposes of summary judgment.  Fed. R. Civ. P. 56(e).

The Carter County Sheriff's Office ("CCSO") has written policies on encountering those with mental health issues and the use of force.  Deputy Jones has undergone training which instructed if you are the first officer at the door, you announce your presence as a law enforcement officer.  The CCSO has an unwritten practice that the first officer at the door must announce his or her presence as law enforcement.  If a CCSO officer is not the first officer at the door, but is instead there to assist another officer, then the CCSO officer is not required to announce his or her presence as law enforcement.

**Disputed material facts**

There are two material facts about which the parties do not agree.  The parties dispute whether and how Officer Hensley announced his presence at the residence.  The Defendants do not claim that either Officer Hensley or Deputy Jones ever expressly identified themselves as law enforcement.  Instead, Officer Hensley asserts he stated, "Travis, Travis, it's Trey, it's Trey, come out here and talk to me. I just want to talk to you, it's Trey. I just want to make sure you're alright." Officer Hensley (Gilbert Hensley, III) goes by "Trey."  Defendants argue that because Mr. Graham and Officer Hensley were familiar with each other based on their prior law enforcement interactions, it was reasonable for Officer Hensley to identify himself as "Trey."  Defendants further argue that such identification constituted an announcement that law enforcement was present.  Mr. Graham, conversely, disputes this, asserting that he never heard anyone say "Trey" or "Travis."  Mr. Graham further asserts that he did not know Officer Hensley's first name (let alone his nickname) and that even if Officer Hensley did identify himself as "Trey," such identification was insufficient to inform Mr. Graham that law enforcement was present.

The parties also dispute how Mr. Graham was holding the firearm when he opened the door to his residence.  Defendants claim Mr. Graham was pointing the gun directly forward and at

Officer Hensley.  Mr. Graham, conversely, claims that he opened the door with his right hand while holding the gun with his left, that he never stuck the gun outside the doorway, and that he did not point the gun at either officer.

## ANALYSIS

The Court first considers the motions for summary judgment of the Lone Grove Defendants (Officer Hensley, Chief Oldham, and Lone Grove) and then considers the motions of the Carter County Defendants (Deputy Jones, Sheriff Bryant, and Carter County).

## I.      Officer Hensley

Officer Hensley argues he is entitled to summary judgment on Mr. Graham's § 1983 claim for excessive force, his § 1983 claim for unreasonable search and seizure, and his claim for negligence under Oklahoma law.  He contends he is entitled to qualified immunity as to both federal claims, arguing that he did not violate Graham's rights, and alternatively that these rights were not clearly established.  Finally, Officer Hensley argues that Mr. Graham cannot seek punitive damages.

### A.      Section 1983 claims

Public officers enjoy a qualified immunity to suit under § 1983, which applies unless their conduct was unreasonable in light of clearly established law.  "If the law at the time did not clearly establish that the officer's conduct would violate the Constitution, the officer should not be subject to liability or, indeed, even the burdens of litigation."[7]

Once a defendant has asserted qualified immunity, the burden is on the plaintiff to prove (1) the officer violated a federal constitutional or statutory right, and (2) that the right was clearly

---

[7] *Brosseau v. Haugen*, 543 U.S. 194, 198 (2004).

established at the time of the unlawful conduct.[8] A right is "clearly established" if Supreme Court or Tenth Circuit precedent (or the weight of authority from other circuits) would put reasonable officers in the defendants' position on notice they were violating the constitution.[9]  The law must be "sufficiently clear that every reasonable official would have understood that what he is doing violates that right."[10] This does not require the existence of a case exactly on point,[11] but does require that the existing caselaw be sufficiently clear to place the constitutional issue "beyond debate."[12] "Put simply, qualified immunity protects 'all but the plainly incompetent or those who knowingly violate the law.'"[13]

The Court has the discretion to determine the order in which these requirements are addressed;[14] immunity exists if either element is absent.[15]  Only when a plaintiff satisfies this heavy burden must the defendant then satisfy the traditional summary judgment standard.[16]  In determining whether the law was clearly established, the dispositive question is "whether the violative nature of *particular* conduct is clearly established," which "must be undertaken in light of the specific context of the case, not as a broad general proposition."[17]

---

[8] *Saucier v. Katz*, 533 U.S. 194, 201 (2001), overruled on other grounds by *Pearson v. Callahan*, 555 U.S. 223, 236 (2009)

[9] *Carabajal v. City of Cheyenne*, 847 F.3d 1203, 1210 (10th Cir. 2017).

[10] *Mullenix v. Luna*, 577 U.S. 7, 11 (2015) (citation omitted).

[11] *Hope v. Pelzer*, 536 U.S. 730, 741 (2002).

[12] *White v. Pauly*, 137 S.Ct. 548, 551 (2017).

[13] *Mullenix*, 577 U.S. at 12 (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)).

[14] *Pearson*, 555 U.S. at 236.

[15] *Medina v. Cram*, 252 F.3d 1124, 1128 (10th Cir. 2001) (citation omitted).

[16] *Estate of Ceballos v. Husk*, 919 F.3d 1204, 1212 (10th Cir. 2019)

[17] *Mullenix*, 577 U.S. at 12 (citations and quotation marks omitted) (emphasis in *Mullenix*.)

Plaintiff's claims of excessive force are reviewed under the Fourth Amendment's objective reasonableness standard.[18]  This standard requires balancing " 'the nature and quality of the intrusion on the individual's Fourth Amendment interests against the importance of the governmental interests alleged to justify the intrusion.' "[19]  Reasonableness is evaluated in light of all the circumstances of the case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether the suspect is actively resisting or attempting to evade arrest by flight.[20]

The existence of an immediate threat to officers is "undoubtedly the most important" factor.[21]  When considering the degree of threat facing officers, a court assesses "(1) whether the officers ordered the suspect to drop his weapon, and the suspect's compliance with police commands; (2) whether any hostile motions were made with the weapon towards the officers; (3) the distance separating the officers and the suspect; and (4) the manifest intentions of the suspect."[22]  The "[u]se of excessive force is an area of the law in which the result depends very much on the facts of each case, and thus police officers are entitled to qualified immunity unless existing precedent squarely governs the specific facts at issue."[23]

The Court denies summary judgment as to Plaintiff's excessive force claim.  Plaintiff argues that the law regarding officer self-identification in use of force cases was clearly established

---

[18] *Graham v. Connor*, 490 U.S. 386, 388 (1989).

[19] *Scott v. Harris*, 550 U.S. 372, 383 (2007) (quoting *United States v. Place*, 462 U.S. 696, 703 (1983)).

[20] *Thomson v. Salt Lake Cty.*, 584 F.3d 1304, 1313 (10th Cir. 2009) (citing *Graham*, 490 U.S. at 396).

[21] *Est. of Valverde by & through Padilla v. Dodge*, 967 F.3d 1049, 1061 (10th Cir. 2020) (quoting *Pauly v. White*, 874 F.3d 1197, 1216 (10th Cir. 2017)).

[22] *Est. of Larsen ex rel. Sturdivan v. Murr*, 511 F.3d 1255, 1260 (10th Cir. 2008).

[23] *Kisela v. Hughes*, 138 S. Ct. 1148, 1153 (2018) (internal quotation marks and citation omitted).

in *Pauly v. White*.[24]   In that case, Daniel Pauly was involved in a "road rage incident" with two women, who called the state police.[25]   The women provided a license plate number and reported that Pauly was intoxicated and confrontational.[26]   Two officers then visited Pauly's home "to make sure nothing else happened."[27]   When the officers arrived, it was late at night and dark.[28]   The officers did not activate their patrol lights but used their flashlights when approaching the property.[29]   One officer claimed to have identified himself as state police a single time, but Pauly did not hear it.[30]   He feared the officers were intruders related to the prior road rage incident and yelled, "Who are you?" and "What do you want?"[31]   The officers responded, "Hey, (expletive), we've got you surrounded.   Come out or we're coming in."[32]   Around this time, an additional officer, Officer White, arrived.[33]   Pauly and his brother armed themselves and announced, "We have guns."[34]   Officer White took cover behind a stone wall fifty feet from the front of the house.[35]

---

[24] 874 F.3d 1197 (10th Cir. 2017)

[25] *Id.* at 1203.

[26] *Id.*

[27] *Id.* at 1204.

[28] *Id.*

[29] *Id.*

[30] *Id.*

[31] *Id.*

[32] *Id.*

[33] *Id.*

[34] *Id.* at 1205.

[35] *Id.*

Pauly then fired two warning shots out of the back door.[36]  Pauly's brother, Samuel, opened a front window and pointed a handgun in Officer White's direction.[37]  Officer White then shot Samuel.[38]

Pauly subsequently filed suit against Officer White and the two non-shooting officers, alleging an excessive force claim under § 1983 and additional state law claims.[39]  The court concluded:

> Based on the record in the present case, viewed in the light most favorable to plaintiffs, Officer White did not have probable cause to believe there was an immediate threat of serious harm to himself or to Officer Mariscal. This is especially true considering Officer White may have participated in the reckless conduct that lead to his perceived need to shoot Samuel Pauly. Thus, Officer White's use of deadly force was not objectively reasonable and violated Samuel Pauly's constitutional right to be free from excessive force.[40]

*Pauly* is sufficiently particularized to the facts of the present matter such that it clearly established Mr. Graham's right to be free from the use of excessive force.  In both *Pauly* and the present case, officers visited a home based on reports from a third-party that an individual was acting erratically. They did not visit the home to make an arrest.  The visit occurred at night, but the officers did not activate their patrol lights or sirens. Instead, they approached with their flashlights out.  The officers never expressly identified themselves in such a way that the resident knew law enforcement officers were present.  Instead, because of the way in which the officers approached, the resident believed intruders could be present and consequently readied a firearm. Then, after the officers viewed the resident with a firearm, one of the officers shot the resident.

---

[36] *Id*.

[37] *Id*.

[38] *Id*.

[39] *Id*. at 1202.

[40] *Id.* at 1222.

The law established in *Pauly* is clear enough that every reasonable official would interpret it to establish the particular rule Mr. Graham seeks to apply.

Further, the Court finds that a rational factfinder could conclude that Officer Hensley violated the right to be free from the use of excessive force.  There are disputed material facts regarding how Officer Hensley identified himself and how Mr. Graham was holding the gun. The officers did not suspect Plaintiff of any crime.  They did not order him to drop his weapon or issue any police commands prior to the shots being fired.  Officer Hensley fired his weapon almost immediately after Mr. Graham opened the door.  Viewing the facts most favorably to Plaintiff, he did not make any hostile motion with the weapon, and did not point it at either officer.  Finally, again viewing the facts in the light most favorable to Plaintiff, a rational factfinder could conclude that Plaintiff did not believe police were at the door and he was responding to intruders.

However, the Court grants summary judgment as to Plaintiff's unlawful search and seizure claim.  A seizure occurs where an officer shoots a suspect and causes the suspect to submit to the officer's show of authority,[41]  and whether a given seizure is unlawful requires a "careful balancing of governmental and private interests."[42]  In response to Officer Hensley's motion, Plaintiff relies *solely* on the Tenth Circuit's decision in *Pauly*.  However, the plaintiffs in that case did not bring a claim for unreasonable search and seizure; they brought only an excessive force claim and other claims under state law.[43]  Indisputably, if *Pauly* did not involve a claim for unreasonable search and seizure, it cannot clearly establish that Officer Hensley engaged in an unlawful seizure.  "The burden is on the Plaintiff[] to cite controlling authority clearly establishing the law governing" the

---

[41] *Bella v. Chamberlain*, 24 F.3d 1251, 1255 (10th Cir. 1994) (citing *California v. Hodari D.*, 499 U.S. 621 (1991)).

[42] *Soldal v. Cook Cty., Ill.*, 506 U.S. 56, 71 (1992) (citation omitted).

[43] *Id.* at 1202.

conduct of the defendant officer.[44]   Here, that allegedly unlawful conduct was the seizure of Plaintiff during the course of a welfare check.   As Plaintiff has failed to cite  controlling precedent which clearly establishes how an officer should conduct a welfare check, the Court grants summary judgment on the unlawful search and seizure claim against Officer Hensley.

### B.      Negligence

Officer Hensley additionally seeks summary judgment on Mr. Graham's negligence claim, which seeks to impose liability directly if he was acting outside the scope of his employment or, alternatively, on Lone Grove if he was acting within the scope of his employment.   The Court concludes Officer Hensley was acting within the scope of his employment and is therefore immune from the negligence claim.[45]

The Oklahoma Governmental Tort Claims Act ("OGTCA") is the exclusive remedy against an Oklahoma governmental entity for a claim in tort.[46]   The State of Oklahoma, including political subdivisions, waived sovereign immunity "for loss resulting from its torts or the torts of its employees acting within the scope of their employment."[47]   The OGTCA provides that any suit brought pursuant to its provisions "shall name as defendant the state or the political subdivision against which liability is sought to be established.   In no instance shall an employee of the state or political subdivision acting within the scope of his employment be named as defendant . . . ."[48] The OGTCA defines "scope of employment" as "performance by an employee acting in good faith

---

[44] Finch v. Meier, 2021 WL 5113664, at *10 (D. Kan. 2021).

[45] Qualified immunity provides a defense to claims based on federal law but does not provide a defense to claims based on state law.  *Eidson v. Owens*, 515 F.3d 1139, 1145 (10th Cir. 2008).  This analysis proceeds independently from the qualified immunity issues.

[46] *Farley v. City of Claremore*, 465 P.3d 1213, 1239 (Okla. 2020).

[47] Okla. Stat. tit. 51, § 153(A).

[48] *Id.* § 163(C).

within the duties of the employee's office or employment or of tasks lawfully assigned by a competent authority . . . ."[49]  Accordingly, an employee who acts in good faith within the duties of his or her office or while carrying out a lawfully assigned task may not be named as a defendant in an action based on the OGTCA.[50]

There is no dispute that Officer Hensley was acting within the duties of his office or while carrying out a lawfully assigned task.  He was on duty, in his law enforcement uniform, and conducting a welfare check in response to a call received by the Lone Grove Police Department.  Mr. Graham instead argues Officer Henley was not acting in good faith.  For an officer to be deemed outside the scope of employment due to a lack of good faith, there must be "acts that clearly show malice or bad faith."[51]  The Oklahoma Supreme Court has held that mere "reckless disregard" for the rights or safety of others does not satisfy this standard.[52]

Whether an officer acted within the scope of employment is not a question for the jury where "only one reasonable conclusion can be drawn from the facts alleged."[53]  Here, only one reasonable conclusion can be drawn: there is no evidence that Officer Hensley acted with malice or bad faith.  Malice involves "either hatred, spite, or ill-will, or else the doing of a wrongful act intentionally without just cause or excuse."[54]  Even assuming Officer Hensley did not announce his presence and that Mr. Graham did not point the gun at either officer, Officer Hensley's actions

---

[49] *Id*. § 152(12).

[50] *Carswell v. Oklahoma State Univ.*, 995 P.2d 1118, 1123 (Okla. 1999).

[51] *Gowens v. Barstow*, 364 P.3d 644, 652 (Okla. 2015).

[52] *Id*.

[53] *Tuffy's, Inc. v. City of Oklahoma City*, 212 P.3d 1158, 1167 (Okla. 2009).

[54] *Gowens*, 364 P.3d at 642.

may amount to recklessness, but they do not constitute bad faith or malice.[55]   Because Officer Hensley was acting in the scope of his employment, he is not a proper party to Mr. Graham's negligence claim.

    **C.**    **Punitive damages**

Lastly, Officer Hensley argues punitive damages cannot be assessed against him.  Punitive damages may be awarded in § 1983 matters "when the defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others."[56]   A defendant acts with "reckless or callous indifference" when he or she acts "in the face of a perceived risk that its actions will violate federal law."[57] Whether punitive damages should be awarded "are of necessity within the discretion of the trier of fact."[58]

The disputed material facts regarding whether Officer Hensley adequately identified himself and whether Mr. Graham pointed his gun at either officer render summary judgment inappropriate on this issue.  A reasonable jury could conclude that Officer Hensley failed to identify himself as law enforcement and that Mr. Graham did not point his gun at either officer.  A reasonable jury could thus conclude Officer Hensley acted with reckless indifference and assess punitive damages.

---

[55] *See id.* at 648, 652 (holding that ambulance driver was both negligent and reckless while speeding through intersection but within the scope of employment because there was no bad faith or malice).

[56] *Fuerschbach v. Sw. Airlines Co.,* 439 F.3d 1197, 1207, n.7 (10th Cir. 2006) (quoting *Smith v. Wade*, 461 U.S. 30, 56 (1983)).

[57] *Eisenhour v. Cty.*, 897 F.3d 1272, 1281 (10th Cir. 2018) (quoting *Kolstad v. American Dental Ass'n*, 527 U.S. 526, 536 (1999)).

[58] *Hampton v. Dillard Dep't Stores, Inc.*, 247 F.3d 1091, 1115 (10th Cir. 2001) (quotation omitted).

## II.   Chief Oldham

Chief Oldham seeks summary judgment on Mr. Graham's § 1983 claim, which alleges deliberate indifference with respect to the policies, practices, and customs at issue along with the training and supervision of Officer Hensley.  As an initial matter, Chief Oldham may not be held liable under § 1983 if Officer Hensley did not violate Mr. Graham's constitutional rights.[59]  Mr. Graham brought two § 1983 claims against Officer Hensley: use of excessive force along with unreasonable search and seizure.  The Court has concluded that Officer Hensley is entitled to qualified immunity on the unreasonable search and seizure claim.  A conclusion that Officer Hensley did not violate the constitution by engaging in some conduct precludes the imposition of liability on Chief Oldham for that conduct.[60]  A conclusion that Officer Hensley is entitled to qualified immunity, however, does not necessarily do so.[61]  Where a finding of qualified immunity is predicated on the basis that the officer's conduct did not violate the law, the political subdivision may not be held liable.[62]  But where an officer violates the law and a finding of qualified immunity is predicated on the basis that the law was not clearly established, the claims against the political subdivision may proceed.[63]

Here, the Court concluded Officer Hensley is not entitled to qualified immunity on the excessive force claim but is entitled to qualified immunity on the unreasonable seizure claim.  Qualified immunity on the unreasonable seizure claim was warranted only because Mr. Graham did not demonstrate the law on the unreasonable seizure claim was clearly established.  He did,

---

[59] *City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986).

[60] *Hinton v. City of Elwood, Kan.*, 997 F.2d 774, 782 (10th Cir. 1993).

[61] *Id.*

[62] *Id.* at 783.

[63] *Id.*

however, demonstrate a constitutional violation for both claims.  Consequently, Chief Oldham could be held liable for the alleged use of excessive force and unreasonable seizure.

### A.    Policy and custom

A suit under § 1983 against a defendant in his or her official capacity "is essentially another way of pleading an action against the county or municipality they represent."[64]  At issue here, therefore, are the policies and customs of Lone Grove.  A defendant may be held liable where it "creates, promulgates, implements, or in some other way possesses responsibility for the continued operation of a policy" the enforcement of which subjects the plaintiff to the deprivation of a constitutional right.[65]  A municipality, however, cannot be liable for the actions of an employee based on a theory of *respondeat superior*.[66]   Instead, the municipality itself must be the "moving force" behind the injury.[67]  A plaintiff may succeed by demonstrating the defendant (1) promulgated or possessed responsibility for an official policy or custom that (2) caused the violation of a federally protected right while (3) acting with the requisite state of mind.[68]

Mr. Graham has not identified a policy or custom of Lone Grove which caused the alleged use of excessive force or unreasonable seizure.  A municipality's "policy" derives from "the decisions of its duly constituted legislative body or of those officials whose acts may fairly be said to be those of the municipality."[69]  But even where a policy has not been formally approved, a

---

[64] *Porro v. Barnes*, 624 F.3d 1322, 1328 (10th Cir. 2010) (citations omitted).

[65] *Dodds v. Richardson*, 614 F.3d 1185, 1199 (10th Cir. 2010).

[66] *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 691 (1978).

[67] *Bd. of Cty. Comm'rs of Bryan Cty., Okla. v. Brown*, 520 U.S. 397, 397 (1997).

[68] *Schneider v. City of Grand Junction Police Dep't*, 717 F.3d 760, 768–69 (10th Cir. 2013) (citations omitted).

[69] *Brown*, 520 U.S. at 403–04 (citing *Monell*, 436 U.S. at 694).

municipality may be said to have a "custom" where "the relevant practice is so widespread as to have the force of law."[70]   Pursuant to Lone Grove's use of deadly force policy, an officer is authorized to use deadly force if the officer reasonably believes his or her life is in jeopardy and deadly force is immediately necessary to preserve his or her life.   An officer is also authorized to use deadly force if the officer reasonably believes the life of another is in jeopardy and deadly force is immediately necessary to preserve the life of another.   Mr. Graham has presented no meaningful argument that this policy is somehow infirm or that there is a widespread practice of violating this policy such that an unconstitutional custom is present.

Mr. Graham instead alleges his injuries were caused by "Defendant Oldham's policy or custom of providing no guidance for officers in a health and welfare check scenario."  This appears to be a reiteration of Mr. Graham's failure to train or supervise claim, which is addressed below. But even assuming "providing no guidance" could be categorized as a policy or custom, Mr. Graham's allegations are belied by the undisputed facts: Lone Grove provides its officers training programs which address the use of force, encountering those with mental health issues, encountering those who are intoxicated, and conducting welfare checks on those who are potentially suicidal.   Mr. Graham has not identified a policy or custom at issue that caused the alleged constitutional deprivations.   And because he did not identify such a policy or custom, Chief Oldham cannot have acted with deliberate indifference to the known and obvious consequences of the policy or custom at issue.   Chief Oldham is consequently entitled to summary judgment on Mr. Graham's claim for deliberately indifferent policies or customs.

**B.**     **Failure to train or supervise**

---

[70] *Id*. at 404 (citing *Monell*, 436 U.S. at 690–91).

The failure to train police officers "may serve as a basis for § 1983 liability only where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact."[71]   A city official may be deemed deliberately indifferent where "the need for more or different training" is "obvious," and the inadequacy of the training is "likely to result in the violation of constitutional rights."[72]   The Supreme Court has warned that "[a] municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train."[73] A failure to supervise claim is generally coextensive with a failure to train claim.[74]   Mere "[s]upervisory status alone does not create § 1983 liability."[75]   Instead, there must be "an affirmative link" between the constitutional deprivation and the defendant's failure to supervise, and the failure must be caused by "deliberate indifference" to any harm that may result.[76]

To establish a municipality's liability, the plaintiff must demonstrate: (1) police conduct violated the plaintiff's constitutional rights; (2) the violation occurred during a usual and recurring situation with which police officers must deal; (3) there is a direct causal link between the alleged rights violation and the inadequate training or supervision; and (4) the municipality's failure to train or supervise demonstrates deliberate indifference.[77]

---

[71] *City of Canton v. Harris*, 489 U.S. 378, 388 (1989).

[72] *Id*. at 390.

[73] *Connick v. Thompson*, 563 U.S. 51, 61 (2011) (citing *Oklahoma City v. Tuttle*, 471 U.S. 808, 822–823 (1985) (plurality opinion)).

[74] *See Whitewater v. Goss*, 192 F. App'x 794, 797 (10th Cir. 2006) (unpublished) ("We treat allegations of failure to supervise (which often may be indistinguishable from failure to train) the same way.").

[75] *Gallagher v. Shelton*, 587 F.3d 1063, 1069 (10th Cir. 2009) (citation omitted).

[76] *Id*. (quotation omitted); *Bryson v. City of Oklahoma City*, 627 F.3d 784, 788 (10th Cir. 2010).

[77] *Allen v. Muskogee, Okla.*, 119 F.3d 837, 841–42 (10th Cir. 1997) (citing *Zuchel v. City and Cty. of Denver*, 997 F.2d 730, 734-35 (10th Cir. 1993)).

First, as previously analyzed, a reasonable jury could conclude that Officer Hensley's conduct violated Mr. Graham's constitutional rights.  Second, the alleged violations occurred during a welfare check, which is a usual and recurring situation with which police officers must deal.  The situation at issue "need not be frequent or constant; it must merely be of the type that officers can reasonably expect to confront."[78]   A welfare check is a scenario an officer can reasonably expect to confront.

Third, however, the undisputed material facts do not establish a link between the alleged rights violation and Officer Hensley's training or supervision.  For "liability to attach in a failure to train case, the identified deficiency in a city's training program must be closely related to the ultimate injury, so that it actually caused the constitutional violation."[79]  Mr. Graham argues Chief Oldham failed to sufficiently train Officer Hensley on adequately conducting a welfare check and the use of deadly force.  The undisputed material facts, however, establish that Officer Hensley has undergone extensive training on these issues.  Officer Hensley has been a CLEET certified law enforcement officer since 2009, and since that time, has had approximately 684 hours of additional law enforcement training.  Lone Grove provides its officers training programs which address the use of force, encountering those with mental health issues, encountering those who are intoxicated, and conducting welfare checks on those who are potentially suicidal.  Then once a year, Chief Oldham reviews Officer Hensley's training transcripts.  Mr. Graham has not identified any deficiency with this training, much less that any such deficiency caused his injuries.

Fourth and finally, Mr. Graham has not established that Chief Oldham acted with deliberate indifference.  "Deliberate indifference" is shown "when the municipality has actual or constructive

---

[78] *Brown v. Gray*, 227 F.3d 1278, 1288 (10th Cir. 2000).

[79] *Carr v. Castle*, 337 F.3d 1221, 1231 (10th Cir. 2003) (quoting *Brown*, 227 F.3d at 1290).

notice that its action or failure to act is substantially certain to result in a constitutional violation, and it consciously or deliberately chooses to disregard the risk of harm."[80]  A "pattern of similar constitutional violations by untrained employees is 'ordinarily necessary' to demonstrate deliberate indifference for purposes of failure to train."[81]  There is simply no evidence that there exists a pattern of constitutional violations regarding excessive force or unreasonable seizures in the Lone Grove Police Department.  And as to Officer Hensley specifically, he had never used deadly force prior to this incident.  The undisputed material facts establish that Chief Oldham's training or supervision of Officer Hensley did not cause the alleged constitutional violations. Consequently, Chief Oldham is entitled to summary judgment on Mr. Graham's claim for deliberately indifferent training or supervision.

## III.   Lone Grove

Lone Grove argues it is entitled to summary judgment on Mr. Graham's cause of action for negligence and that Mr. Graham should not be able to simultaneously assert distinct claims against it and Chief Oldham in his official capacity.

### A.   Negligence

Mr. Graham alleged his negligence claim against Officer Hensley and Lone Grove in the alternative.  Because the Court concluded Officer Hensley was acting in the scope of his employment, Lone Grove could be held liable for loss resulting from torts Officer Hensley committed.[82]  The OGTCA, however, provides that a political subdivision shall not be liable if the

---

[80] *Id.* at 1229 (quoting *Barney v. Pulsipher*, 143 F.3d 1299, 1307–08 (10th Cir. 1998)).

[81] *Connick*, 563 U.S. at 62 (quoting *Brown*, 520 U.S. at 409).  Although not the general rule, "evidence of a single violation of federal rights" is sufficient to impose municipal liability where inadequate training presents "obvious potential" for a rights violation.  *Allen*, 119 F.3d at 842.  Here, though, as discussed, the training was not inadequate.

[82] *See* Okla. Stat. tit. 51, § 153(A).

loss results from "the failure to provide, or the method of providing, police, law enforcement or fire protection."[83]  The Oklahoma Supreme Court has recognized:

> "Protection" serves as the key word for the textual analysis of the critical sentence quoted here from subsection 6. The exemption in that subsection is invocable when the tort arises while a municipality is rendering services that fall into some category of police protection, law enforcement protection or fire protection. In short, a governmental subdivision is not *liable for deficiency of protective services extended by its police, law enforcement or fire fighting components.*[84]

Where an officer engages in a law enforcement activity, rather than providing protection, § 155(6) is not applicable.[85]  But where an officer seeks to protect an individual from harming herself or others, § 155(6) is applicable.[86]  Courts have applied § 155(6) to shield a municipality from liability where officers respond to a situation involving a suicidal individual and ultimately use deadly force.[87]

Here, Officer Hensley was acting in a protective capacity, not seeking to enforce any law. He was conducting a welfare check in response to a phone call in which Mr. Graham was reported to be intoxicated and suicidal. Officer Hensley was dispatched to the house to prevent Mr. Graham from harming himself or others, and not to arrest Mr. Graham or otherwise enforce any law.  The purpose of the interaction was to avert injury.  Officer Hensley was therefore acting to provide

---

[83] Okla. Stat. tit. 51, § 155(6).

[84] *Salazar v. City of Oklahoma City*, 976 P.2d 1056, 1066 (Okla. 1999).

[85] *Morales v. City of Oklahoma City ex rel. Oklahoma City Police Dep't*, 230 P.3d 869, 876 (Okla. 2010) (holding officer was not engaged in providing protection when breaking up fight and arresting participant).

[86] *Schmidt v. Grady Cty., Okla*., 943 P.2d 595, 596 (Okla. 1997) (holding that officer was engaged in providing protection when woman with mental health issues was taken into custody).

[87] *Myers v. Oklahoma Cty. Bd. of Cty. Comm'rs*, 151 F.3d 1313, 1315 (10th Cir. 1998) (holding that officers were acting in a protective capacity when responding to a 911 call that plaintiff's decedent was armed, intoxicated, and suicidal); *Pigeon v. Sweeney*, 2020 WL 8674674, at *3 (W.D. Okla. 2020) (holding that officers were acting in a protective capacity when responding to 911 call that plaintiff's decedent was suicidal); *Bridges v. Wilson*, 2016 WL 10537014, at *1 (N.D. Okla. 2016) (holding that officer was acting in a protective capacity when responding to a 911 call that plaintiff's decedent was intoxicated and possibly suicidal).

police protection.  And because Officer Hensley was providing police protection, Lone Grove is immune from Mr. Graham's negligence claim pursuant to § 155(6).

### B.    Claims against Chief Oldham as claims against Lone Grove

Lone Grove also argues that simultaneous but distinct claims asserted against it and Chief Oldham in his official capacity are unnecessary and will be confusing to the jury.  A suit against a government official in his or her official capacity is equivalent to a suit against the governmental entity of which the official is an agent.[88]  Where a plaintiff brings a claim against a government official in his official capacity and duplicates that claim against the employing governmental entity, dismissal of the official capacity claim may be warranted.[89]

Here, Mr. Graham brought a claim for negligence against Lone Grove and a claim for deliberately indifferent policies, practices, customs, training, and supervision against Chief Oldham.  As held above, Lone Grove is immune to the claim for negligence.  Because the only claim asserted against Lone Grove has been dismissed, Lone Grove will no longer be a Defendant, and there is no risk of confusing the jury.  This issue is moot as a result of Lone Grove's dismissal.

## IV.   Deputy Jones

Plaintiff argues that Deputy Jones violated § 1983 by failing to intervene to stop the shooting and by unlawful search and seizure.  He also argues that Deputy Jones is liable for negligence under Oklahoma law.

### A.    Federal claims

The Court grants summary judgment as to Plaintiff's federal claims.  An officer may be held liable under § 1983 where he or she "fails to intervene to prevent a fellow officer's excessive

---

[88] *Kentucky v. Graham*, 473 U.S. 159, 165–66 (1985).

[89] *See Adams Wrecker Serv. v. City of Blanchard, Okla.*, 2013 WL 5726022, at *5 (W.D. Okla. 2013).

use of force."[90]  An officer, however, only has a duty to intervene where he or she has "a realistic opportunity to intervene to prevent the harm from occurring."[91]  Two issues relevant to this inquiry are whether the officer had the ability to intervene and, if so, whether the officer had sufficient time to intervene.[92]

Here, even assuming Officer Hensley used excessive force,[93] the undisputed material facts establish that Deputy Jones had no realistic opportunity to prevent the harm from occurring.  From the time Mr. Graham opened the door to the time when Officer Hensley fired the shots, approximately one second elapsed.  Deputy Jones had no reasonable means of preventing the shots from being fired.[94]  Deputy Jones could not have known Officer Hensley intended to use deadly force until the very moment force was used.  Because he had no realistic opportunity to intervene, Deputy Jones is entitled to summary judgment.

The Court finds Defendant is protected by qualified immunity as to any claim of unlawful seizure.  Plaintiff  was seized when he was shot by Officer Hensley, and not Deputy Jones.[95]  He

---

[90] *Fogarty v. Gallegos*, 523 F.3d 1147, 1162 (10th Cir. 2008) (citing *Mick v. Brewer*, 76 F.3d 1127, 1136 (10th Cir.1996)).

[91] *Vondrak v. City of Las Cruces*, 535 F.3d 1198, 1210 (10th Cir. 2008) (quoting *Anderson v. Branen*, 17 F.3d 552, 557 (2d Cir. 1994)).

[92] *Savannah v. Collins*, 547 F. App'x 874, 876–77 (10th Cir. 2013) (unpublished).

[93] If Officer Hensley did not engage in the use of excessive force, then Deputy Jones cannot be liable for failing to intervene.  *See Routt v. Howard*, 764 F. App'x 762, 768 (10th Cir. 2019) (unpublished).

[94] *Compare Gaudreault v. Municipality of Salem, Mass*., 923 F.2d 203, 207 n.3 (1st Cir. 1990) (holding that where "the attack came quickly and was over in a matter of seconds," officers did not fail to intervene); *with Fogarty*, 523 F.3d at 1164 (holding that officer who was present for an arrest lasting three to five minutes had opportunity to intervene).

[95] *See Pauly*, 874 F.3d at 1215 ("Officer White [] is the one who actually 'seized' Samuel Pauly by shooting him.").

might still be responsible for the shooting if he somehow proximately caused the use of force,[96] but Deputy Jones is entitled to qualified immunity because Plaintiff has failed to show the law governing the deputy's conduct was clearly established.  As he did with respect to Officer Hensley, Plaintiff relies solely on *Pauly v. White*  as having clearly established the law applicable to the shooting.   Again, however, *Pauly* does not clearly establish that Deputy Jones engaged in an unreasonable seizure because the plaintiff in *Pauly* did not bring a claim for unreasonable search and seizure.    If *Pauly* did not involve a claim for unreasonable seizure, it cannot provide controlling guidance for an officer conducting backup support for another officer during the course of a welfare check.

Finally, the Court grants summary judgment as to Plaintiff's claim of unlawful search. After the shooting, Deputy Jones briefly entered the residence to secure Mr. Graham and his weapon.   Mr. Graham argues this entry and search violated the Fourth Amendment because it occurred without a warrant.   It is true that any search inside a home without a warrant is "presumptively unreasonable."[97]  The government, however, may overcome this presumption by demonstrating "exigent circumstances."[98]    A warrantless entry into a home is justified where an officer needs "to guarantee the safety of themselves and others."[99]  This standard is satisfied where: (1) the officers have reasonable grounds to believe that there is an immediate need to protect the lives or safety of themselves or others; (2) the search is not motivated by an intent to arrest or seize

---

[96] *See Trask v. Franco*, 446 F.3d 1036, 1046 (10th Cir. 2006) (holding that probation officers could be liable under § 1983 for unlawful detention and arrest conducted by state police officer if their conduct proximately caused the detention and arrest).

[97] *Payton v. New York*, 445 U.S. 573, 586 (1980).

[98] *Welsh v. Wisconsin*, 466 U.S. 740, 750 (1984).

[99] *United States v. Thomas*, 372 F.3d 1173, 1177 (10th Cir. 2004).

evidence; and (3) there is some reasonable basis, approaching probable cause, to associate the emergency with the place to be searched.[100]

Deputy Jones' entry into the residence satisfies this standard.  It was reasonable for Deputy Jones to believe he needed to secure the weapon to protect his safety and the safety of Officer Hensley.  Plaintiff had just been shot but still had access to his gun.  Deputy Jones did not enter to arrest Plaintiff or to seize evidence, but to secure the gun and prevent any additional harm.  Finally, the emergency (the shooting and unsecured firearm) was reasonably associated with the place to be searched (the entryway where the gun was located).  Deputy Jones' entry into Mr. Graham's residence was justified based on the exigencies of the situation.[101]  Accordingly, the Court finds Deputy Jones did not violate Plaintiff's right to be free from an unreasonable search.

## B.    Negligence

Deputy Jones also seeks summary judgment on Mr. Graham's negligence claim, which seeks to impose liability on Deputy Jones directly if he was acting outside the scope of his employment or, alternatively, on Carter County if he was acting within the scope of his employment.  As it did with Officer Hensley, the Court concludes Deputy Jones was acting within the scope of his employment and is therefore immune from the negligence claim.

As analyzed above, an employee acting within the scope of employment is not a proper party to a tort claim under the OGTCA.[102]  Like Officer Hensley, Deputy Jones was acting within the duties of his office or while carrying out a lawfully assigned task.  He was on duty, in his law

---

[100] *Id*. (citation omitted).

[101] *See United States v. Walker*, 474 F.3d 1249, 1253 (10th Cir. 2007) ("[I]t was also reasonable for them to take control of the situation by entering to disarm Mr. Walker, who could otherwise continue to pose a danger to the officers and others.").

[102] Okla. Stat. tit. 51, § 163 (C).

enforcement uniform, and conducting a welfare check in response to a request for backup made by Officer Hensley.  Further, there is no evidence that Deputy Jones did not act in good faith.  Even if Deputy Jones acted with reckless disregard, such actions do not rise to the level of malice or bad faith.[103]  Because Deputy Jones was acting in the scope of his employment, he is not a proper party to Mr. Graham's negligence claim under the OGTCA.

## V.   Sheriff Bryant

Sheriff Bryant seeks summary judgment on Mr. Graham's § 1983 claim, which alleges deliberate indifference with respect to the policies, practices, and customs at issue along with the training and supervision of Deputy Jones.  As outlined with respect to Chief Oldham, Sheriff Bryant may not be held liable under § 1983 if Deputy Jones did not violate Mr. Graham's constitutional rights, but a conclusion that Deputy Jones is entitled to qualified immunity does not necessarily shield Sheriff Bryant from liability.[104]  Where an officer violates the law and a finding of qualified immunity is predicated on the basis that the law was not clearly established, the claims against the political subdivision may proceed.[105]  As noted earlier, the Court finds that Deputy Jones did not violate Plaintiff's right to intervention or to be free from unreasonable seizure.

However, the Court found that Deputy Jones was qualifiedly immune to the claim of illegal seizure because Plaintiff has failed to show that the law was clearly established.  But a rational factfinder could conclude that Plaintiff's rights were still violated.[106]  If Hensley did not announce himself, a rational factfinder could decide that Deputy Jones should have.  Thus, while the Deputy

---

[103] *See Gowens*, 364 P.3d at 652.

[104] *Hinton*, 997 F.2d at 782.

[105] *Id*.

[106] Deputy Jones concedes that "it is not clear that, at the time of the incident, Defendant Jones was aware that Officer Hensley had not identified himself as a law enforcement officer."

is protected by qualified immunity, the Court must determine whether Sheriff Bryant may be held liable for an unreasonable seizure by his deputy.

### A.      Policy and custom

Liability may be imposed under § 1983 where the plaintiff demonstrates the defendant (1) promulgated or possessed responsibility for an official policy or custom that (2) caused the violation of a federally protected right while (3) acting with the requisite state of mind.[107]  Disputed material facts render summary judgment for Sheriff Bryant on this issue improper.  The CCSO has an unwritten practice that the first officer at the door must announce his or her presence as a law enforcement officer.  But if a CCSO officer is not the first officer at the door and is instead there to assist another, the CCSO officer is not required to announce his or her presence as a law enforcement officer.  A reasonable jury could conclude this unwritten practice has been formally approved as a "policy" or at the very least, is sufficiently widespread such that it constitutes a "custom."[108]

Whether this policy or custom caused Mr. Graham to be unreasonably seized is contingent on disputed facts.  The parties dispute whether Officer Hensley adequately identified himself.  If Deputy Jones was aware that Officer Hensley had not adequately identified himself and, pursuant to CCSO policy, did not feel required to identify himself as a law enforcement officer because Officer Hensley was the first officer at the door, a reasonable jury could conclude the CCSO policy regarding officer identification caused Mr. Graham to be unreasonably seized.  As has been reiterated, a lack of officer identification could have caused Mr. Graham to believe intruders were

---

[107] *Schneider*, 717 F.3d at 769.

[108] *See Brown*, 520 U.S. at 403–04.

present, which caused him to arm himself.  The presence of the gun, in turn, led to Mr. Graham being shot.

As to Sheriff Bryant's state of mind, Mr. Graham must establish that Sheriff Bryant acted with "deliberate indifference."[109]  This standard may be satisfied where "a violation of federal rights is a highly predictable or plainly obvious consequence of a municipality's action or inaction."[110]  To the extent the CCSO policy allows a CCSO officer to not identify themselves as law enforcement so long as another officer arrives at the door first, a reasonable jury could conclude that an officer involved shooting is a plainly obvious consequence of this policy.  Sheriff Bryant is not entitled to summary judgment on Mr. Graham's claim for deliberately indifferent policies or customs as it pertains to the alleged unreasonable seizure.

### B.      Failure to train or supervise

The failure to train or supervise "may serve as the basis for § 1983 liability only where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact."[111]  To establish liability based on a failure to train or supervise, the plaintiff must demonstrate: (1) police conduct violated the plaintiff's constitutional rights; (2) the violation occurred during a usual and recurring situation with which police officers must deal; (3) there is a direct causal link between the alleged rights violation and the inadequate training or supervision; and (4) the municipality's failure to train or supervise demonstrates deliberate indifference.[112]

---

[109] *Schneider*, 717 F.3d at 771.

[110] *Id*.  (quoting *Barney*, 143 F.3d at 1307).

[111] *Harris*, 489 U.S. at 388; *see also Bryson*, 627 F.3d at 788 (addressing failure to supervise).

[112] *Allen*, 119 F.3d at 841–42; *Zuchel*, 997 F.2d at 734-35.

As with the deliberately indifferent policies or customs claim, this claim is contingent on disputed material facts.  First, and as has been discussed, a reasonable jury could conclude that Deputy Jones' conduct violated Mr. Graham's constitutional rights.  Second, the alleged violations occurred during a welfare check, which is a usual and recurring situation with which police officers must deal.  Third, however, whether inadequate training or supervision caused the alleged rights violation is contingent on disputed material facts. Deputy Jones underwent training which instructed, "if you are the first officer at the door, you announce your presence as a law enforcement officer."  Coupled with the CCSO practice regarding officer identification, this training appears to instruct that if you are *not* the first officer at the door, then you are *not* required to announce your presence as a law enforcement officer.  To the extent this is the case, a reasonable jury could conclude that CCSO training or supervision caused Mr. Graham to be unreasonably seized.

Fourth and finally, a reasonable jury could conclude that the inadequate training or supervision constitutes deliberate indifference.  "Deliberate indifference" occurs where "a violation of federal rights is a highly predictable or plainly obvious consequence of a municipality's action or inaction."[113]  To the extent Deputy Jones was trained that he need not identify himself as law enforcement when conducting a welfare check so long as another officer arrives at the door first, a reasonable jury could conclude that an officer involved shooting is a plainly obvious consequence of this policy.

Sheriff Bryant is entitled to summary judgment on the cause of action for deliberately indifferent policies, practices, customs, training, and supervision as it pertains to Deputy Jones'

---

[113] *Schneider*, 717 F.3d at 771.

alleged failure to intervene and unreasonable search, but not as it pertains to Deputy Jones' alleged unreasonable seizure.

## VI.   Carter County

Lastly, Carter County argues it is entitled to summary judgment on Mr. Graham's cause of action for negligence, which was alleged in the alternative.  Because the Court concluded Deputy Jones was acting in the scope of his employment, Carter County could be held liable for loss resulting from torts Deputy Jones committed.[114]   In Oklahoma, the elements of negligence are: "(1) a duty owed by the defendant to protect the plaintiff from injury, (2) a failure to properly exercise or perform that duty and (3) plaintiff's injuries proximately caused by the defendant's failure to exercise the duty of care."[115]   Carter County argues it is entitled to summary judgment because Deputy Jones did not breach any duty owed to Mr. Graham.[116]

Disputed material facts preclude summary judgment on Mr. Graham's negligence claim. The parties dispute whether and how Officer Hensley announced his presence as a law enforcement officer, and a reasonable jury could conclude Deputy Jones' actions caused Mr. Graham to be harmed.[117]   Carter County is not entitled to summary judgment on Mr. Graham's negligence claim.

---

[114] *See* Okla. Stat. tit. 51, § 153(A).

[115] *Franklin v. Toal*, 19 P.3d 834, 837 (Okla. 2000).

[116]  Carter County did not present any argument that it was immune from liability under Okla. Stat. tit. 51, § 155(6) based on a theory that Deputy Jones was engaging in a protective, as opposed to a law enforcement, function. The Court concluded an argument along these lines was persuasive as to Lone Grove but declines to grant summary judgment *sua sponte* on grounds not raised by the moving party.  Fed. R. Civ. P. 56(f); *Oldham v. O.K. Farms, Inc.*, 871 F.3d 1147, 1150 (10th Cir. 2017).  Mr. Graham has not had an opportunity to brief these issues as they pertain to Deputy Jones.

[117] *See Ellien v. City of San Jose*, 968 F.2d 1220, 1992 WL 164387 *2 (9th Cir. 1992) (unpublished) (affirming jury verdict for plaintiff where officer acted negligently in failing to identify himself as law enforcement prior to plaintiff being shot during a welfare check).

## CONCLUSION

For the reasons set forth above, the Motions for Summary Judgment filed by Officer Hensley (Doc. 120); Chief Oldham and Lone Grove (Doc. 119); Deputy Jones and Carter County (Doc. 103); and Sheriff Bryant (Doc. 101) are **GRANTED IN PART and DENIED IN PART** as follows:

a. **Officer Hensley (Doc. 120)**: Officer Hensley is entitled to qualified immunity on the cause of action for unreasonable seizure. Officer Hensley is additionally entitled to summary judgment on the cause of action for negligence. All other relief requested is denied.

b. **Chief Oldham and Lone Grove (Doc. 119)**: Chief Oldham is entitled to summary judgment on the cause of action for deliberately indifferent policies, practices, customs, training, and supervision. Lone Grove is entitled to summary judgment on the cause of action for negligence. All other relief requested is denied.

c. **Deputy Jones and Carter County (Doc. 103)**: Deputy Jones is entitled to summary judgment on the causes of action for failure to intervene and unreasonable search. Deputy Jones is additionally entitled to qualified immunity on the causes of action for failure to intervene, unreasonable search, and unreasonable seizure. Deputy Jones is additionally entitled to summary judgment on the cause of action for negligence. All other relief requested is denied

d. **Sheriff Bryant (Doc. 101)**: Sheriff Bryant is entitled to summary judgment on the cause of action for deliberately indifferent policies, practices, customs, training, and supervision as it pertains to Deputy Jones' alleged failure to intervene and unreasonable search, but not as it pertains to Deputy Jones' alleged unreasonable seizure. All other relief requested is denied.

**IT IS SO ORDERED.**

Dated this 8th day of June, 2022.


ERIC F. MELGREN
CHIEF UNITED STATES DISTRICT JUDGE